Ethel Skidmore, Executrix of Estate of William R. Skidmore, Deceased, Appellant, v. Joseph M. Johnson, Appellee.

Gen. No. 44,177.

350

Opinion filed May 26, 1948.    Released for publication June 10, 1948.

GOLDSTEIN & GOLDSTEIN, of Chicago, for appellant; LOUIS E. LEVINSON, of Chicago, of counsel.

FLOYD E. THOMPSON and CARL SCHULZ, both of Chicago, for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

On February 14, 1945, Ethel Skidmore, executrix of the estate of William R. Skidmore, deceased, filed a complaint in chancery in the circuit court of Cook county against Joseph M. Johnson, alleging that letters testamentary were issued to her by the probate court of Cook county on April 5, 1944; that on or about September 1, 1939, William R. Skidmore, having prior thereto been indicted by the United States grand jury on charges of violating the laws of the United States with respect to the reporting and paying of income taxes, and being required to furnish bail in the sum of

$25,000, did prior to and on September 1, 1939, request the defendant to furnish acceptable securities in the sum of $25,000 for bail; that pursuant to the request the defendant consented to undertake to obtain acceptable securities for that purpose, but failing to do so, advised Skidmore of his inability; that Skidmore then directed William Goldstein, who was then acting as his, Skidmore's, attorney, to assist the defendant in obtaining acceptable securities to be deposited as bail; that for this purpose Skidmore did on September 1, 1939, deliver to Goldstein $25,000 in cash to be used by Goldstein to aid defendant in obtaining acceptable securities to be deposited for bail; that Skidmore, "having directed that the sum of $25,000 as aforesaid advanced by him be deposited in the name of the defendant, Joseph M. Johnson, and upon the depositing of the sum of $25,000 furnished by him in the name of the defendant, Joseph M. Johnson and the Central National Bank, hereinafter named, having issued its certificate of deposit for the aforesaid sum of $25,000 furnished by and the property of William R. Skidmore, in the name of the said defendant, Joseph M. Johnson, as is hereinafter set forth, William R. Skidmore then and there imposed trust and confidence in the said defendant, Joseph M. Johnson, and the relationship between William R. Skidmore and Joseph M. Johnson then and there and during all the time thereafter was a fiduciary and trust relationship between them."

Plaintiff further represented that on September 1, 1939, Goldstein, then and there acting as attorney for Skidmore and then and there having in his possession the sum of $25,000 theretofore delivered to him by Skidmore, proceeded with defendant to the Central National Bank, Chicago; that then and there the defendant and Goldstein requested of that bank through its vice president, to lend to the defendant $25,000 upon the offer by defendant to deposit with the bank as

collateral security certain City of Chicago tax warrant notes of the face value of $50,000 upon which judgment had been entered in the sum of $55,758; that the request for the loan was refused by the bank; that thereupon Goldstein, as attorney and agent for Skidmore, offered to deposit as additional security for the loan of $25,000 requested by Johnson, the sum of $25,000 in the possession of Goldstein, being the money and property of Skidmore; that this offer was accepted by the bank; that thereupon the bank loaned to defendant the sum of $25,000 in cash and accepted from him as collateral security the aforesaid City of Chicago tax warrant notes, and from Goldstein, as agent of Skidmore, "but in the name of said defendant Joseph M. Johnson" the sum of $25,000 in cash in the possession of Goldstein, "the said deposit of $25,000 as aforesaid having been on September 1, 1939, converted by the Central National Bank into its certificate of deposit for $25,000 issued to the defendant, Joseph M. Johnson, and being held by the bank in the form of the said certificate of deposit as additional security for the aforesaid loan of $25,000 to the defendant, Joseph M. Johnson." Plaintiff alleged further that at the request of the defendant and Goldstein the Central National Bank asked the First National Bank of Chicago to purchase United States Treasury notes of the par value of $25,000 in the name of Joseph M. Johnson, for which notes the Central National Bank paid the First National Bank with the proceeds of the loan made to the defendant; that the treasury notes were delivered to defendant by the First National Bank on September 1, 1939; that defendant and Goldstein "having obtained the aforesaid United States Treasury notes," did on September 1, 1939, meet Skidmore in the United States court house in Chicago and did deposit with the clerk of the United States district court for the northern district of Illinois as bail for Skidmore in the case then pending, the securi-

ties consisting of a 1½ per cent United States Treasury note for $5,000, and two 1 per cent treasury notes for $10,000 each, for which the clerk issued his receipt dated September 1, 1939, to defendant, and "which is now in the possession of plaintiff and to the time of his death was in the possession of William R. Skidmore during his lifetime."

Plaintiff represented further that on March 4, 1940, the Central National Bank, at the request and under the direction of defendant, paid the loan made to him by applying the certificate of deposit for $25,000 held by that bank as additional collateral security for the loan, in full payment of the loan; that defendant thereupon received from that bank the City of Chicago tax warrants which had been deposited by him as part of the collateral for the loan; that on May 11, 1942, pursuant to a motion by defendant, the district court, in the case against Skidmore which had been disposed of by the conviction and surrender of Skidmore, entered an order that defendant be released as surety and that the clerk return to him the $25,000 in treasury notes deposited by him; that pursuant to the order the treasury notes were delivered to defendant and that the notes or proceeds thereof, since May 11, 1942, have been in the possession and control of the defendant; that defendant has not delivered any of the treasury notes to Skidmore or plaintiff; that defendant has failed and refused to pay to plaintiff any part of the $25,000, "the property of William R. Skidmore and deposited by William R. Skidmore through his agent as additional collateral for the loan made to Joseph M. Johnson by the Central National Bank on September 1, 1939"; that defendant in directing the Central National Bank to pay his loan of $25,000 with $25,000 belonging to Skidmore, and on May 22, 1942, having received from the clerk of the district court the treasury notes "deposited as bail," did unlawfully and fraudulently obtain the sum of $25,000 belonging to

William R. Skidmore and to the plaintiff as executrix of his estate, and did abuse and violate the trust and confidence "imposed" in him by William R. Skidmore, there having existed between them, defendant Joseph M. Johnson and William R. Skidmore, a confidential and fiduciary relationship with respect to the transaction hereinabove described.

Plaintiff alleges further that by reason of the confidential and fiduciary relationship existing between defendant and Skidmore and by reason of the subsequent abuse of the confidence reposed in defendant by Skidmore, and by reason of the fraudulent and unlawful acts of defendant with respect to the use, application and conversion by defendant of the $25,000, the property of Skidmore, "a constructive trust exists with respect to the sum of $25,000, the property of the said William R. Skidmore, unlawfully and fraudulently converted" by defendant; that the legal title to the $25,000 having been placed by Skidmore in the defendant and defendant having had legal title to the treasury notes and to the certificate of deposit of $25,000 issued by the Central National Bank for the money and property of Skidmore, and the loan made by that bank having been made to the defendant, she, plaintiff, is without remedy except in a court of equity; and that she offers to do equity. She prays that the defendant be required to answer the complaint; that the court declare and establish a constructive trust with respect to the $25,000, "the property of William R. Skidmore, deceased," in favor of plaintiff; that defendant forthwith pay to plaintiff the sum of $25,000 with interest at 5 per cent from March 4, 1940, less all credits, if any, to which defendant may be entitled; that the court decree that malice is the gist of the action; that a writ of *capias ad satisfaciendum* issue; and that she may have such other and further relief as equity may require.

Defendant filed a written motion to strike and dismiss the complaint, specifying eleven grounds. The motion was supported by an affidavit stating, among other things, that on October 4, 1944, plaintiff filed a petition in the probate court of Cook county for issuance of a citation to turn over assets; that the citation was issued, commanding defendant to appear, to submit to an examination under oath and to show cause, if any, why an order should not be entered against him to account for property of William R. Skidmore, deceased, in his possession; that he filed his answer to the petition; that a hearing was had at which plaintiff, defendant and other witnesses were examined by the court and counsel, and at which certain exhibits relating to the transaction set forth in the complaint herein were offered and received in evidence; that upon the conclusion of the hearing an order was entered finding that the $25,000 in treasury notes and the proceeds thereof were defendant's property; that they were never the property of Skidmore or plaintiff, and ordering that the citation be quashed, and that he, defendant, be discharged and have judgment against plaintiff herein for costs. The affidavit of defendant stated further that William R. Skidmore died February 18, 1944; that at the time defendant paid his loan and closed his account at the Central National Bank on March 4, 1940, Skidmore was actively engaged in business in Chicago; that he had personal knowledge of the transaction and all preceding transactions; that on May 12, 1942, defendant withdrew the treasury notes deposited by him with the clerk of the district court; that Goldstein, attorney and agent for Skidmore, was in Chicago during all of this period and had knowledge of all of the transactions, or had knowledge of sufficient facts to place upon him a duty to inquire concerning the transactions, which inquiry would have resulted in actual

knowledge thereof, or had knowledge of sufficient facts to constitute constructive notice of all of the transactions at or about the time of their occurrence; that defendant is informed and believes and upon such information and belief states the facts to be that William Goldstein was in constant touch with Skidmore and that he kept him, Skidmore, fully informed as to all of the transactions; that on February 9, 1944, plaintiff made application for letters testamentary; that on April 6, 1944, the will was admitted to probate and plaintiff was appointed executrix; that on August 9, 1944, an inventory was filed; that plaintiff was not present at any of the transactions involving defendant, alleged in the complaint; and that she has no knowledge of any of the transactions except as they are told to her by William Goldstein and others.

Attached to the motion and affidavit are a copy of the petition for citation to turn over assets, a copy of the answer to that petition, and a copy of the order of the probate court. Plaintiff did not "present affidavits or other proof denying the facts alleged or establishing facts obviating the objection," as permitted by Par. 3 of Sec. 48 of the Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 172, subpar. (3); Jones Ill. Stats. Ann. 104.048, subpar. (3)]. The circuit court sustained defendant's motion to dismiss the complaint and plaintiff appealed.

In support of the decree defendant asserts that the facts alleged in the complaint do not lay a basis for raising a constructive trust; that the judgment order of the probate court is a complete bar to the supposed cause of action and that the failure of Skidmore, with knowledge of all the facts and circumstances, to make any claim against him, arising out of the transactions alleged in the complaint during the four years and more of his life after the happening of the alleged events, constitutes *laches* and bars any action by his personal representative. Plaintiff

maintains that the complaint states a cause of action in equity "under the doctrine of a constructive trust by operation of law"; that the action is not barred by the judgment of the probate court; and that the action is not barred by *laches*. Motions to dismiss admit facts well pleaded, but not conclusions of law or conclusions of fact unsupported by allegations of specific facts upon which such conclusions rest. Plaintiff states that the complaint contains well pleaded facts which establish a relationship of trust and confidence and an act of betrayal of that trust and confidence, which unjustly enriched the defendant, and that the allegations establish a constructive trust. The general statements of the complaint that a fiduciary and trust relationship existed between Skidmore and defendant and the general charges of fraud are not admitted by the motion to dismiss. We agree with defendant that, stripped of the general charges, the ultimate facts alleged in the complaint and admitted by the motion to dismiss are, substantially, that plaintiff is executrix under the last will of William R. Skidmore, deceased; that during his lifetime, being required to give bail in a criminal case pending in the United States district court, he requested defendant to furnish acceptable securities in the sum of $25,000 to be deposited as bail; that defendant sought to obtain a bank loan for that amount by offering to deposit as collateral City of Chicago tax warrants in the amount of $50,000 and judgments thereon which he owned; that the warrants and judgments were refused as collateral; that he so informed Skidmore; that Skidmore then gave his attorney, William Goldstein, $25,000 in cash and instructed Goldstein to meet defendant and arrange with him to obtain and deposit the required security for bail; that Goldstein met defendant in the Central National Bank in Chicago on September 1, 1939, and deposited the $25,000 with the bank, which issued its certificate of deposit in that amount in the

name of defendant; that the certificate of deposit and defendant's tax warrants and judgments were taken and held by the bank as collateral for a loan of $25,000 then made to defendant; that the Central National Bank, at defendant's and Goldstein's request, purchased $25,000 of United States'treasury notes through the First National Bank of Chicago for defendant and paid for them with the proceeds of defendant's loan; that defendant, Goldstein and Skidmore took these treasury notes and deposited them with the clerk of' the district court as bail for Skidmore; that the clerk issued his receipt for the notes to defendant; that the receipt was in Skidmore's possession to the time of his death and is now in the possession of plaintiff; that on March 4, 1940, defendant arranged with the Central National Bank to liquidate the loan; that the bank did this by applying the certificate of deposit, which represented Skidmore's $25,000, to the payment of the loan and returned defendant's $50,000 in tax warrants to him; that on May 11, 1942, defendant moved in the district court for the entry of an order requiring the clerk to deliver to him the $25,000 in treasury notes deposited as bail for Skidmore; that the order was entered; that defendant received the $25,000 in treasury notes; and that neither Skidmore nor plaintiff has been paid the $25,000 or any part thereof, which was deposited with the Central National Bank as additional collateral for the loan.

As announced by our Supreme Court in *Steinmetz v. Kern,* 375 Ill. 616, constructive trusts are divided into two general classes, one where there is a confidential relationship and the subsequent abuse of the confidence is used to establish such trust, and the other where actual fraud is considered as equitable ground for raising the trust. We turn to a consideration of plaintiff's contention that there was a fiduciary relationship which defendant abused. A fiduciary relationship may be actual or constructive. An actual

fiduciary relation exists between guardian and ward, trustee and *cestui,* attorney and client, or husband and wife. The mere allegations in a complaint of simple facts showing the existence of any such relationship is sufficient to establish the existence of a fiduciary relation. *Giese v. Terry,* 382 Ill. 34, 39. A constructive fiduciary relationship may be said to exist where one person reposes sufficient confidence in another so as to render that other superior and dominant in the dealings between them. While the origin of the confidence is immaterial and it may be moral, social, domestic or merely personal, yet it must, in fact, exist, and where based upon a course of dealings, the nature of such dealings to the extent of showing that the subservient party reposed confidence in the dominant party to the required degree must be alleged. *Duncan v. Dazey,* 318 Ill. 500, 523. The mere existence of the fiduciary relation in itself will not give rise to a constructive trust, but the abuse of the relationship must be alleged. Where the relation arises not from a formal trust relationship but from confidence reposed by one person in another, that abuse must be shown to have arisen out of undue influence exercised by the dominant party upon the subservient party. The necessity of pleading facts showing the basis for charges of fraud, fiduciary relationship and undue influence is made clear in *Duncan v. Dazey,* 318 Ill. 500, 519.

In the complaint in the instant case there is no charge of any prior dealings between the parties. It does not appear that Skidmore and defendant were acquainted prior to September 1, 1939, when his attorney met the defendant at the Central National Bank and induced that bank to make a loan of $25,000 to the defendant. The complaint further fails to allege any facts showing that Skidmore ever placed confidence in the defendant. There are no allegations showing the existence of confidence to the extent that defendant

dominated Skidmore or imposed his will upon him. The allegations in the complaint make it clear that the dominant party in the transaction was Skidmore, that he gave the instructions and that his instructions were carried out. There is no allegation that Skidmore ever asked the defendant for any advice, or that defendant ever gave him any advice with respect to the transactions charged. There is no allegation that defendant requested Skidmore to advance the $25,000, or to deposit this amount as additional security with the Central National Bank in order to induce the latter to make the loan to defendant. It is not charged that the $25,000 was delivered to defendant. Furthermore, it will be noted that in all dealings charged in the complaint Skidmore was at all times represented by counsel and received independent advice on his actions. In *Masterson v. Wall*, 365 Ill. 102, the court found that while a fiduciary relation existed, nevertheless, the independent advice available to the alleged dependent eliminated any basis for a charge of fraud or undue influence, and any basis for constructive trust. We find, therefore, that there are no sufficient allegations that a fiduciary relationship existed between Skidmore and defendant.

In considering the charge that defendant was guilty of fraud, we agree with defendant that the elements of actionable fraud are misrepresentation or concealment of an existing material fact,—scienter, deception and injury; (*Martin v. Sixty-Third and Halsted State Savings Bank*, 299 Ill. App. 123, 127; *Wright v. Peabody Coal Co.*, 290 Ill. App. 110, 115); that the misrepresentation or concealment must be of an existing or past fact, and that a false promise of future performance does not give rise to an action for fraud; *Keithley v. Mutual Life Ins. Co.*, 271 Ill. 584, 587; *Brodsky v. Frank*, 342 Ill. 110, 117; that mere passive concealment of pertinent facts during a business transaction does not constitute fraud; *Racine*

*Fuel Co. v. Rawlins,* 377 Ill. 375, 381; and that one who merely exercises his legal rights is not thereby chargeable with fraud. *Foutch v. Zempel,* 332 Ill. 192, 302. The complaint charges defendant with one representation only, namely, that he was unable to obtain a loan of $25,000 upon the sole security of his City of Chicago tax warrants. The truth of this representation is admitted in the complaint. There is no charge of any other representation on the part of defendant or anyone else. There is no allegation that the defendant concealed any facts from anyone. There is no allegation of knowledge, of deception or of injury. Plaintiff charges that the defendant carried out the instruction of Skidmore by purchasing the treasury notes and depositing them with the clerk. There is no allegation or suggestion that Skidmore at any time requested or expected defendant to return the treasury notes to him. Defendant is charged with having carried out the procedure of incurring an obligation to repay the Central National Bank at Skidmore's request. Thereafter, defendant, continuing to carry out Skidmore's orders is charged with taking the treasury notes, purchased with the proceeds of the bank loan, and depositing them with the clerk as bail. This transaction shows that Skidmore was in fact the dominant party and that defendant ran the risk of losing his own collateral and of suffering a judgment against himself in favor of the bank if Skidmore had forfeited the bail. Defendant did no more than exercise his legal rights in asking the bank to liquidate the loan in 1940. At that time the treasury notes were on deposit with the clerk as bail and were beyond the control and benefit of defendant. The pledge agreement under which the $25,000 in cash of Skidmore's money was pledged with the Central National Bank was an agreement between the bank and Goldstein and not between the bank and defendant. If plaintiff or Skidmore was harmed by the act of the bank in taking payment of its loan out

of the collateral deposited by. Goldstein rather than the collateral deposited by defendant, the responsibility, if any, for any such damage to Skidmore lies solely with the bank. The only other act charged against defendant is the withdrawal of the treasury notes from the clerk's office after the Skidmore trial was over. The allegations show that these notes were purchased by defendant and paid for with his own money, the proceeds of the bank loan, and that they were at all times the property of defendant. Therefore, in withdrawing the notes he was only exercising his legal rights. The mere fact that defendant has retained and continues to hold the treasury notes purchased pursuant to Skidmore's plan, after the notes had fulfilled the function for which they were purchased, does not give rise at some indeterminate future date to a constructive trust in Skidmore's favor, especially where there is no allegation that Skidmore ever expected to get the notes back. We therefore find that the complaint is vulnerable for the additional reason that it fails to allege that defendant obtained any property from Skidmore by fraudulent means.

One of the grounds urged in the motion to dismiss and in this court is that the judgment order of the probate court of November 9, 1944 is *res judicata* of plaintiff's present suit asking for the declaration of a constructive trust. Plaintiff asserts that an examination of the petition for citation and defendant's answer thereto makes it clear that she sought to obtain an order requiring defendant to turn over to her either the $25,000 in treasury notes, or the proceeds thereof; that the petition did not concern itself with any of the other circumstances which are set forth in the complaint involving the deposit of cash by Skidmore or the issuance of a certificate of deposit to defendant with Skidmore's consent, or the liquidation of the loan made by reason of Skidmore's cash, using the certificate of deposit for this purpose; and that the petition

did not and could not have asked for or obtained from the probate court the relief sought in the complaint. She states that the issue raised by the petition for citation and the answer was: Were the treasury notes the property of Skidmore and should defendant be required to turn them over to his executrix. She states further that if it was shown in the hearing in the probate court that title to the treasury notes was always in defendant and never in Skidmore, that it cannot be denied that the ruling on this issue is the basis for the court's order quashing the citation, dismissing the petition and finding that the treasury notes were the property of defendant, never the property of Skidmore, and are not the property of plaintiff. She also states that the complaint alleges that title to the treasury notes was at all times in the defendant; that the issue of the ownership of the notes is not raised in the complaint; and that it cannot be said that the citation proceeding and the complaint both seek the same relief and the recovery of the same thing.

In the application of the principle of *res judicata* there are two well recognized rules. The first, sometimes known as the doctrine of estoppel by judgment, is that where the parties and the subject matter are the same, the prior adjudication is binding not only with respect to the issues actually decided, but with respect to all issues which could have been raised in the particular proceeding as it was actually litigated. The second rule, sometimes known as estoppel by verdict, is that where a material question in any prior litigation has been determined in and was material to the former suit between the same parties, such former decision is conclusive upon the same parties in the same or any other court, regardless of whether the cause of action is the same or not. A citation proceeding in the probate court is a special statutory proceeding in the nature of an equitable proceeding, in which both the legal and equitable rights

of the parties are to be considered by the court in its determination of questions of title. *Keshner v. Keshner*, 376 Ill. 354, 359; *Hicks v. Monahan*, 209 Ill. App. 516, 522. Where the probate court has jurisdiction of the subject matter and of the parties, the same presumption in favor of the rulings of that court must be indulged in as in favor of the circuit court under like circumstances. *Blair v. Sennott*, 134 Ill. 78, 88. The affidavit filed in the circuit court on defendant's motion to dismiss includes the record in the probate court on the citation proceeding. It shows that plaintiff filed a verified petition claiming that the $25,000 in treasury notes were the property of decedent at the time of his death and were in the possession of defendant; that defendant filed a verified answer denying that the treasury notes were the property of Skidmore during his lifetime and averring that they had been purchased by defendant and were at all times his property. We agree with defendant that the issue was squarely raised as to the ownership, both legal and equitable, of the treasury notes. The affidavit further shows that the probate court made a finding of fact that the $25,000 in treasury notes and the proceeds thereof are the property of defendant and that they never were the property of Skidmore and that they are not the property of plaintiff.

Plaintiff concedes that the probate court determined that the treasury notes were the property of Skidmore and asserts that she does not ask the court to again adjudicate as to the question of the ownership of the notes. She also states that the defense of estoppel by verdict was not presented by defendant's motion to dismiss. In our opinion the defense of estoppel by verdict is properly raised in the motion. Plaintiff says that she has not alleged and therefore cannot offer any proof to again try the issue of the ownership of the treasury notes. She states further that the complaint alleges that she was de-

frauded out of $25,000 in cash; that she does not seek the treasury notes or "the $25,000 in cash used to purchase them"; that the notes were issued to defendant; that "the cash was the proceeds of his loan"; that she seeks the imposition of a constructive trust upon defendant; that he used collateral which did not belong to him to pay his loan; that he unjustly enriched himself to the extent of $25,000; and that under the circumstances equity affords a remedy. The record shows that the petition for the issuance of the citation contained an allegation that Skidmore expended the sum of $25,000 for the treasury notes; that the answer of defendant denied that Skidmore or anyone for him spent $25,000 or any other sum to purchase the treasury notes; and avers that he purchased the notes with his own money and without any contribution from Skidmore. Hence, the citation proceeding raised the further issue as to whether the money of Skidmore was used to purchase the treasury notes. This further issue was also determined adversely to plaintiff, since if the court had determined that the notes had been purchased with Skidmore's money, it must necessarily be found under the doctrine of resulting trust that he or plaintiff was entitled to the notes. The cases of *Sims v. Powell*, 390 Ill. 610, and *Merrill v. Merrill*, 187 Ill. App. 589, are authority for the proposition that the judgment of the probate court in a citation proceeding is *res judicata* in a subsequent equity proceeding to determine title to personal property. We find that the proposition as to whether the $25,000 expended by Skidmore was used to purchase the treasury notes was put in issue in the citation proceedings and decided adversely to plaintiff. The probate court judgment eliminates both the notes themselves and the money allegedly advanced by Skidmore as the *res* of any constructive trust. We are satisfied that the judgment order of the probate court is a complete bar to the relief sought by plaintiff in her com-

plaint. It is unnecessary to consider the defense of laches. The chancellor was right in dismissing the complaint. Therefore, the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*

LEWE, P. J., and KILEY, J., concur.