BERNICE LAGEN, Plaintiff-Appellee, *v.* CHRIS LAGEN, Defendant-Appellant.

(No. 57186;

First District (1st Division)—July 30, 1973.

Maragos, Richter & Russell, of Chicago, (Harold Richter and Gerald Cohen, of counsel,) for appellant.

Jerome Berkson, of Chicago, for appellee.

Mr. JUSTICE EGAN delivered the opinion of the court:

The plaintiff filed a petition under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, sec. 72) to vacate a judgment for divorce and an oral property settlement agreement incorporated in the judgment on the grounds that the judgment was procured by fraud and duress. At the conclusion of the hearing the trial court found that there had not been a full and complete disclosure by the defendant as to the amount of his assets and entered an order setting aside the property settlement agreement but not disturbing the judgment for divorce. The sole issue is whether the judge's finding is against the manifest weight of the evidence.

The plaintiff, Bernice Lagen, and the defendant, Chris Lagen, were married on August 21, 1952, at Crown Point, Indiana. A complaint for separate maintenance, or in the alternative for divorce, was filed against Chris Lagen on October 6, 1966, alleging that the plaintiff was forced to leave the marital home because of the conduct of the defendant in that he had been guilty of extreme and repeated cruelty. Two children had been born during the marriage and at the time of the filing of the complaint their son, William, was 17 and their daughter, Christine, was 16. The complaint alleged that the parties owned in common or, alternatively, that the plaintiff had an equity in the following realty: 9000 South Yates Avenue, 8851 Muskegon Avenue, 21 townhouses at 80th and Emerald Avenue, 21 townhouses at 80th and Union Avenue, 8811 South Stony Island, 93rd and Stony Island, 47th and Drexel Boulevard, 69th and Euclid Avenue, 83rd and South Chicago Avenue, and 73rd and Kimbark Avenue, all located in the City of Chicago. The complaint also alleged that the parties owned in common certain stock in Chribern Builders, Inc. and certain savings contained in various depositories.

The defendant, by his answer, denied that the parties owned the

realty set forth in the complaint in common or that the plaintiff had any claims or equity in the realty.

On February 14, 1967, Judge Drymalski entered judgment for divorce which stated that the cause was heard as a contested matter. In his order he found the defendant guilty of extreme and repeated cruelty and that the parties had "entered into an oral agreement after a full and complete disclosure of each to the other of all of the wealth, property, estate and income of the other and after each had been fully informed of his or her respective rights; * * * and having entered into said agreement voluntarily and with full and complete knowledge * * *." Custody of the minor children was given to both parties jointly and the children were allowed to determine with which party they would reside. The defendant was ordered to pay $25 per week for the support of William, the medical expenses of the children, and the expenses incident to the college attended by each child. The plaintiff was awarded the residence property at 9000 South Yates and was required to "* * * make all payments on the first mortgage presently outstanding and due against said realty up to the date of the entry of [the] judgment and thereafter, [and] the plaintiff [would] be responsible for the balance of said mortgage debt and [would] keep and hold the defendant harmless thereon." The plaintiff was further awarded all the furniture and other furnishings except those specifically enumerated as going to the defendant or their daughter, Christine. The defendant was awarded all stocks, bonds, securities, and interests in land trusts, particularly any interest held by the plaintiff to the real estate referred to in the complaint. The defendant was ordered to pay in lieu of alimony the sum of $30,000, which was to be paid in installments of $5000 commencing 15 days after the entry of the judgment and on the first, second, third, fourth, and fifth anniversary date of the entry of the judgment. The payments were to abate on the death of either party.

The defendant was required to deliver certain insurance policies issued on the life of the defendant to a trustee for the benefit of the two minor children so long as the children were minors or in attendance at college during the time the defendant was responsible for their college expenses. In the event the children were no longer beneficiaries under the insurance trust, the trustee was directed to disburse the proceeds of the insurance to the plaintiff to the extent of any amount remaining due under the lump sum alimony provisions. Both parties were required to hold the other harmless for any expenses incurred since the separation, and both were to bear their own costs and attorney's fees.

Marshall Perel was the attorney for the plaintiff at the time of the divorce action. He had received from the defendant the joint income

tax returns for 1963, 1964 and 1965, a list of his real estate holdings and a list of his stock. The list of stocks had been prepared by his partner, who had received the information orally from one of the attorneys for the defendant. The list contained 13 stocks, the amount of shares, the price per share and the total value of each block of stock. The total value for all shares was shown as $135,000. He did tract searches on the real estate listed. He testified that representations were made to him, without identifying who made them, that most of the property was in trust, in ownership with others, that the properties were worth about what they were mortgaged for and, consequently, that the plaintiff had no equity in them. He checked into the representations and found that they were true. He never saw an unsigned statement of the defendant's financial condition dated January 1, 1966, showing the defendant's net worth to be $233,754 until after the petition to set aside the decree was filed, but he was aware of every item appearing on that statement except the actual value of the stock or the interest of the defendant in the buildings listed. He testified that the defendant's net worth was represented by his attorney as something over $100,000. He concluded that it was a little over that figure. Another financial statement dated October 2, 1967, signed by the defendant, was introduced into evidence and showed his net worth at $426,445.

Perel testified he was unaware at the time of the original decree of the following: property in Trust No. 360 in River Oaks; a bank account at Telegraph Savings and Loan Association; a bank account at Lake Shore Savings and Loan. He did not remember whether he was aware of the townhouse property at 75th and Kenwood. However, the plaintiff herself testified that she knew of the property in River Oaks but forgot to tell her lawyer. The bank account at Lake Shore Savings and Loan appears on the 1965 income tax return.

The plaintiff also testified that she did not know about the property at 73rd and Kimbark, 79th and Exchange, 7939 Ingleside and 6945 Chappel; all she knew about 75th and Kenwood was that there was a food store across the street and that the defendant had told her that the property belonged to Lamson Brothers, who she knew were her husband's brokers. However, the original divorce complaint listed the property on Kimbark, and the properties on Ingleside and Chappel were listed on the 1965 income tax return.

Of the four stocks listed on the financial statement of January, 1966, Sunset International Petroleum and Bethlehem Steel did not appear on the list of stocks prepared by Perel's partner. But the records of Lamson Brothers show that the defendant sold the Sunset stock on February 21, 1966, and thus did not own it at the time of the agreement. Moreover,

we refer again to the testimony of Perel, who said that he was aware of all of the items on the financial statement, but not their value. Of the stocks listed on the financial statement of October, 1967, only G. C. Computer does not appear on the list of stocks, which did include nine stocks that do not appear on the financial statement of October, 1967. The record fails to show when the defendant acquired G. C. Computer.

The defendant testified that the list prepared by Mr. Perel's partner was incorrect in that he owned two hundred, not one thousand, shares of Indiana General and two hundred, not five hundred, shares of Syntex. This is corroborated by the records of Lamson Brothers, which show purchases of only 200 shares of Indiana General and 200 of Syntex. We note that the list of stocks prepared by the plaintiff's attorney has two separate entries of Syntex, one for 200 shares and another for 500. If the value of the 500 shares of Syntex were subtracted from the total contained in the stock list, the amount would be reduced to $102,000. The defendant denied ever using the financial statements and the plaintiff offered no testimony to refute this. Perel received the financial statement of January, 1966, from the defendant's attorney after the petition was filed. The plaintiff received the 1967 statement after the decree from Chris Mitchell, who owned property with the defendant.

At the close of the hearing, the trial court said:

"Well, gentlemen, I have listened to you fully and completely here.

Now, the defendant testified that he didn't make up those statements and that she gave this list of those properties to her lawyer and I do not think that there has been a complete disclosure here where you have stocks totaling from one hundred and thirty five thousand dollars and a net worth of one hundred and fifteen thousand and then financial statements showing that he has a net worth of four hundred and twenty six thousand or two hundred and thirty three thousand—

I don't believe that there has been a full and complete disclosure made, the kind that ought to have been made in this kind of transaction and I'll enter an order, not disturbing the judgment for divorce, but, setting aside the property settlement agreement and set it down for hearing."

The burden of proving fraud is on the party asserting it, and the evidence must be clear and convincing and cannot be established upon mere suspicion. (*Turzynski v. Libert*, 122 Ill.App.2d 352, 359, 259 N.E.2d 295.) That burden is even "more onerous * * * when a party seeks to vacate or modify a property settlement incorporated in a divorce decree,

all presumptions [being] in favor of the validity of the settlement."
*Garmisa v. Garmisa*, 4 Ill.App.3d 411, 426, 280 N.E.2d 444.

Fraud may consist in the concealment of what is true as in the assertion of what is false, but mere passive concealment of pertinent facts during a business transaction does not necessarily constitute a fraud. (*Skidmore v. Johnson*, 334 Ill.App. 347, 79 N.E.2d 762.) And the concealment must be shown to have been done with the intention to deceive under circumstances creating an opportunity and duty to speak.

The plaintiff, therefore, has the burden of showing by clear and convincing evidence that the defendant knowingly concealed a fact at the time of the settlement agreement, that neither she nor her attorney were aware of the fact, and that the concealment injured her. The only properties that the defendant has not affirmatively proved were known to the plaintiff were 79th and Exchange, 75th and Kenwood and an account at Telegraph Savings & Loan. After Perel testified that he had received a list of the defendant's real estate holdings he identified a Group Exhibit 5 a through g and was asked: "Are these all the parcels of real estate that you were able to discover?" He answered: "* * * [T]o the best of my knowledge, that is all that we had discovered. Now, *there might have been others, but this I couldn't swear to.*" (Emphasis added.) Neither the list of real estate he received nor Group Exhibit 5 were ever offered in evidence. The properties at 79th and Exchange and 75th and Kenwood and the $1000 account at Telegraph Savings & Loan do not appear on any of the documents received but rather were disclosed by the testimony of the defendant. Perel was unable to say whether he knew of the property at 75th and Kenwood and he was never specifically asked about 79th and Exchange. The burden is on the plaintiff to prove that she was not aware of the property and not on the defendant to prove that she was. From this testimony of Perel we conclude that the plaintiff has not proved that she was unaware of the properties at 79th and Exchange and 75th and Kenwood.

The plaintiff's argument may be summarized as a contention that, since there is a disparity between the financial statements showing $233,000 and $426,000 net worth and the stock list showing $135,000, the defendant must have concealed his assets. The statement of January, 1966, shows the following real estate and ascribed values: ½ interest in a four-flat at 7721 South East End, $24,500; ⅔ interest in an eight-flat at 8851 Muskegon, $66,000; 21 contracts of sale on property at 8018 South Emerald, 8019 South Emerald and 8018 South Union, $307,000; totaling $397,500. The statement of October, 1967, shows, in addition to the Muskegon, Emerald and Union property listed on the first state-

ment, the following: two-flat at 2823 East 77th Street, $20,000; vacant lot at 9600 South Kolmar, Oak Lawn, $12,500; ¼ interest in a fifteen-flat at 9725 South Cicero, Oak Lawn, $70,000; totaling $475,500. The 1966 statement listed the value of 50 shares of Chribern Builders, Inc., at the book value of $745; the 1967 statement showed the value at $25,268.

The defendant testified without rebuttal that at the time of the decree he no longer owned the property at 7721 East End and that he paid $3500 for his interest in the Muskegon property, which had a $70,000 mortgage; his equity in the property was $3500, and not $66,000. He thought he paid $25,000 for a 60% interest in the property at 80th and Union which had a $300,000 mortgage. His equity, he said, was zero. The record does not reflect when he acquired the two properties in Oak Lawn listed on the 1967 statement, and it was never really established that he in fact owned the two-flat at 2823 East 77th Street.

■■ The trial judge's remarks at the close of the evidence indicate he placed great weight on the financial statements. We emphasize again that the burden of proof was on the plaintiff, and the two financial statements, never used so far as the record reflects, containing expressions of opinions of value of real estate are outweighed by unrebutted sworn testimony. Indeed, we believe they are entitled to no weight here. Proof that an individual has merely prepared two pieces of paper containing lists of property and the estimated value thereof is proof of neither ownership nor value.

The thrust of the petition is that the defendant concealed his true net worth. The defendant testified that his net worth at the time of the decree was beween $140,000 and $150,000. Perel testified that he didn't think that the defendant or his attorney ever gave an exact figure because he didn't think "it could be determined as to an exact figure" and that he concluded that the figure was a little over $100,000 based on the "list of his stocks and equities in the house and what [Perel] obviously *suspected* were his real estate holdings." (Emphasis added.) This, in spite of the list he had showing stocks in the value of $135,000.

■■ The plaintiff relies on *Garmisa v. Garmisa*, 4 Ill.App.3d 411, 280 N.E.2d 444. In that case the defendant husband and his attorney had a meeting with his wife and her attorneys. He had represented to his attorney that his net worth was $500,000 and that figure was given to his wife's attorneys. At that time he was negotiating for the sale of his business but did not consider the potential sale in determining his net worth nor did he tell his attorney or his wife's attorneys of the potential sale. The court held that he had concealed a material fact. In this case, however, the evidence is explicit that the defendant never made any expression of his net worth, the plaintiff failed to prove that he con-

cealed any assets and, most important, as her own lawyer testified, he checked the representations made concerning the real estate and determined that they were true. We hold, therefore, that the plaintiff has failed to maintain her burden of proof to show fraud by concealment.

■■ The plaintiff knew the defendant's lawyer, accountant and stockbroker and persons he was associated with in the real estate business. Perel was familiar with the method of evaluating real estate but never had the properties appraised. He never asked for any statement of net worth. The same discovery that was used so extensively by Mr. Berkson at the hearing on the petition, including deposing the defendant, was available to Mr. Perel but never used. The value of many of the stocks listed could be ascertained by reading the daily newspapers. While we do not mean to suggest that negligence in discovering the facts is always a bar to an action for fraud, under the circumstances of this case what was said in *Dickinson v. Dickinson*, 305 Ill. 521, 527, 528, 137 N.E. 468, is most apt:

> "A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations."

The plaintiff may not now be heard to say that she was deceived, if she was, since she had ample opportunity to ascertain the truth. See also *Schmidt v. Landfield*, 20 Ill.2d 89, 169 N.E.2d 229; *Broberg v. Mann*, 66 Ill.App.2d 134, 213 N.E.2d 89.

■■ While both sides have briefed and argued the question of duress, we note that the trial judge made no such finding. It suffices to say that the evidence would not support a finding of coercion. The case cited by the plaintiff (*James v. James*, 14 Ill.2d 295, 152 N.E.2d 582) is inapposite, principally because the trial judge in *James* erroneously informed the wife of her rights and was hostile to her. No such suggestion is made here.

The order of the circuit court is reversed and remanded with instructions to enter an order denying the petition to vacate.

Order reversed and cause remanded with instructions.

BURKE, P. J., and HALLETT, J., concur.