*In re* Adoption of NICOLE LEIGH HOFFMAN, a Minor.—(ROSE ALLEN HOFFMAN *et al.*, Petitioners-Appellees, *v.* BERNARD ALLEN HOFFMAN *et al.*, Defendants-Petitioners-Appellants.)

(No. 12490;

Fourth District—December 17, 1974.

Samuels, Miller, Schroeder, Jackson & Sly, of Decatur (William O. Martin, of counsel), for appellants.

Thomson, Thomson, Zanoni & Flynn, of Bloomington (Chester Thomson and Mike McElvain, of counsel), for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Bernard and Susan Hoffman, petitioners (herein parents), filed a motion under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72) to vacate the decree of adoption of the circuit court of De Witt County. The decree of adoption in question had been entered in favor of Robert and Rose Hoffman, respondents, the adopted child's paternal grandparents (herein grandparents). The circuit court denied the motion. The only stated basis for the court's ruling was that "[p]etitioners have failed to sustain their burden of proof." This appeal is from the judgment entered. The single issue here is whether the trial court's ruling was against the manifest weight of the evidence. We find that it was.

The facts giving rise to this appeal are as follows: The parents were married on December 5, 1969. At that time, Bernard was 19 and serving in the United States Navy; Susan was 16 and attending high school. Susan resided with her parents until approximately June 13, 1970, the date their daughter, Nicole Leigh, was born. Thereafter, Susan moved in with her in-laws. Bernard joined Susan and the infant in September of 1970, after he was honorably discharged from the United States Navy.

This period in the lives of Bernard and Susan was one of adjustment and stress. They experienced a great deal of marital discord, and at one time Bernard contemplated a divorce from Susan. Then, sometime in May or June of 1971, the question of adopting Nicole was raised. According to the parents, the question of adoption was raised by the grandparents, an assertion contested by the latter. In any case, the record reflects that the matter was raised because parents or grandparents felt that some arrangements should be made in order to provide for Nicole in the event Bernard and Susan should die in a common disaster. Later on, when Bernard contemplated a divorce, Bernard's mother allegedly suggested that Bernard and Susan execute a consent to adoption in order

to assure that if Bernard and Susan did become divorced, Nicole would remain on the Hoffman side of the family. This plan was rejected. However, the grandparents persisted by arguing that such a provision would be in the best interest of Nicole. The parents inquired of grandparents if adoption was the only method by which a guardianship for Nicole could be effected, and the grandparents allegedly stated that it was. The grandparents denied that any such representation was made.

Grandparents retained counsel to accomplish the adoption of their granddaughter. On July 1, 1971, the parents met with the grandparents' attorney. He discussed the matter with them. Thereafter, they and the attorney went to the chambers of Judge William C. Calvin. Judge Calvin also briefly discussed the matter with the parents. The judge admonished them of the finality of their consent to adoption; thereafter, they executed the consent to adoption. On July 30, 1971, the adoption decree was entered. The parents continued to reside with grandparents and Nicole as if nothing had occurred that would have affected their parental relationship with their daughter. In late September of 1972, the parents were to move into a trailer they had purchased. When they attempted to take Nicole with them, grandparents refused to permit her to be taken from the residence.

On July 23, 1973, the parents filed a petition, supported by affidavits, requesting that the decree of adoption be set aside. The petition alleged that representations made by respondent, Rose Hoffman, as to why the parents should execute a consent to the adoption of their daughter, Nicole, were false, and that these representations were relied upon by the parents. The petition further contended that the consent to adoption was obtaind in violation of section 11 of the Adoption Act (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—11).

On October 2, 1973, a hearing was held on the petition to vacate before Judge Joseph C. Munch. At the hearing, nine witnesses testified. The parents and grandparents testified on their own behalf and under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1971, ch. 110, par. 60.) The testimony was acrimonious and contradictory.

The parents contended that they sincerely loved their daughter; that they were responsible and dutiful parents; and that they had eagerly accepted the burdens of parenthood. They contended that their love for their daughter and a deep desire to see that she was taken care of in the event of their untimely demise prompted them to give their consent to adoption. They related that they had, in good faith, trusted and relied upon the grandparents for guidance and counseling in this matter. Bernard admitted in his testimony that Judge Calvin had admonished him of the consequences of the consent to adoption. He stated he was

aware that the consent was irrevocable. He explained that at the time of the adoption he was confident that his parents would never deprive him and Susan of the care and custody of their daughter. Bernard stated that he felt he could trust his parents that they would never turn on him.

Susan testified that it was Mrs. Hoffman who initially raised the question of adoption, and in so doing stressed that if Bernard and Susan should be killed in an automobile accident, Nicole would be without a guardian, and that the proper way to see that Nicole was provided for was through adoption processes.

Both Susan and Bernard stated that Mrs. Robert Hoffman made arrangements for the adoption with her attorney, Thomas Lamkin, and that they met with Lamkin on one occasion, prior to the execution of their consent to adoption. Bernard and Susan stated that they had not consulted an attorney concerning the adoption, nor were they ever advised that they had a right to counsel relative to the matter.

Mrs. Robert Hoffman stated that the parents took very little interest in the child and that she was required to look after and care for Nicole most of the time. She stated that her son failed as a father, in that he performed no fatherly functions and was gone almost every evening. Mrs. Hoffman stated that on many occasions Susan went with Bernard, thus leaving the infant in grandparents' home. Furthermore, both grandparents contended that the parents contributed very little for the support of Nicole, and that Bernard was not steadily employed when he resided with them. The grandparents urged that it was parents who initiated all conversations concerning the adoption, and that the parents were informed that if an adoption was effected, it would be final and that Nicole would not be traded back and forth between the families.

Jesse Hammer, a friend of Bernard Hoffman, was called to testify by the parents. His testimony dealt with a conversation between Bernard Hoffman and Rose Hoffman that he had overheard one evening while in the grandparents' residence. Hammer said that Rose Hoffman told Bernard that he could have Nicole back when he settled down.

Mrs. Nicholas Hoffman, Bernard's paternal grandmother, testified on behalf of the parents. She related that she had a conversation with Rose Hoffman concerning the latter's attachment to Nicole. In the course of the conversation, Rose Hoffman allegedly stated that the parents would never get Nicole from her. On cross-examination, counsel for the grandparents attempted to discredit her testimony by establishing that she disliked her daughter-in-law, Rose Hoffman.

The parents then called Alice Wiekle, the sister of Robert Hoffman, to testify. She related in her testimony that she had observed Susan and Rose Hoffman with Nicole on four or five occasions during a 2-year

period, and that on each occasion Mrs. Rose Hoffman clearly dominated when it came to the care and maintenance of Nicole. She stated that Susan was never given an opportunity to care for Nicole because of Mrs. Hoffman's domination.

The grandparents called attorney Thomas Lamkin to testify. He stated that he had admonished the parents concerning the finality of the adoption proceedings in question. Moreover, he related the sequence of events that occurred in Judge Calvin's office the day that the parents executed the consent for adoption.

After arguments of counsel for the parents and grandparents and the guardian ad litem, the court took the matter under advisement. On October 11, 1973, the court denied the motion to vacate the decree of adoption in a one-sentence order, and the parents appealed.

■■■ Under section 11 of the Adoption Act (Ill. Rev. Stat. 1971, ch. 4, par. 9.1—11), a properly executed and acknowledged consent to adoption is irrevocable unless procured by fraud or duress. The petition in question sought to have the consent to adoption executed by the parents set aside on the grounds it had been induced by fraud. Fraud generally includes anything calculated to deceive and is accompanied by a wrongful intent. (*Exline v. Weldon*, 57 Ill.2d 105, 311 N.E.2d 102.) The burden is on the party asserting the existence of fraud under a section 72 petition. (*Lagen v. Lagen*, 14 Ill.App.3d 74, 302 N.E.2d 201.) However, the purpose of a section 72 proceeding is to bring before the court facts not appearing of record which, if known by the court at the time the final judgment was entered, would have prevented its rendition. *Akers v. Christen*, 11 Ill.App.3d 369, 296 N.E.2d 774.

■■ The main thrust of the parents' argument is that because of the parental relationship that existed between themselves and the grandparents, the circumstances surrounding their marriage, and their relatively young ages, they were dependent upon them for guidance and advice. In short, the grandparents owed the parents a fiduciary duty which precluded them from taking advantage of their vulnerable situation. We accept the parents' theory and find that such a fiduciary relationship did in fact exist. Also, the existence of this fiduciary relationship was underscored by the scope of the parents' dependency upon the grandparents, as illustrated by this record. As noted in *Curtis v. Fisher*, 406 Ill. 102, 113, 92 N.E.2d 327, "The fiduciary relation is considered to exist and relief is granted where influence has been acquired and *abused*, and in those cases in which confidence has been reposed and betrayed." (Emphasis added.)

It is apparent from the record that this *duty* was breached by the grandparents in their efforts to secure custody of their grandchild through

adoption channels. The record reveals a biarre set of circumstances that was spawned by the interplay of the personalities and relationships. All parties concerned contributed to the confusion and instability of the situation. However, the course of events was interfaced with the grandparents' unwillingness to exercise their own fiduciary obligations owed to the parents and their granddaughter. Grandparents compromised their responsibilities and chose to gain custody of their granddaughter through less than candid methods. Even if the grandparents sincerely believed the infant was neglected and the parents were unfit, their method of securing custody was inexcusable and unorthodox. If the grandparents were concerned with the best interest of their granddaughter, they could have resorted to the Juvenile Court Act (Ill. Rev. Stat. 1971, ch. 37, par. 701—1 et seq.) and obtained custody via the proceeding therein.

It is apparent from the record that originally the best interest of the infant was a secondary factor, and that all parties involved were more concerned with their own best interest. For example, the testimony of parents and their corroborating witnesses establishes that Mrs. Hoffman became inordinately attached to Nicole and functioned as a surrogate mother in all respects. The record also establishes that the parents were immature and neglected their parental duties. Their immaturity was manifested in their instability and inability to adjust to their new mode of life. Moreover, their lack of insight and experience was apparent from their testimony regarding the fact that they felt the adoption was only a legal formality and that respondents would never turn on them. The grandparents, in violation of their fiduciary responsibility, exploited the parents' ignorance and used this ignorance to sever Nicole from them. The cumulative effect of the entire course of events and the manner that the grandparents capitalized thereupon amounted to fraud which was perpetrated upon the parents and the infant. The fact that the grandparents might not have initiated the talk concerning adoption, or that they may not have suggested adoption as a means of providing a guardian for Nicole in the event of parents' untimely demise, is of no consequence.

■ In so holding, we are mindful of the rationale underlying the public policy found in the Adoption Act which makes a consent to an adoption irrevocable. (See People ex rel. Orway v. Catholic Home Bureau, 34 Ill.2d 84, 213 N.E.2d 507.) Our opinion in no way undermines that policy, since the element of fraud was present in this case, and the existence of fraud vitiates the voluntariness of the natural parents' consent to adoption. Moreover, the unique nature of the family relationship that existed between the natural parents, adoptive parents and the adopted child destroyed the elements of confidentiality that the declared public

policy sought to preserve. Nicole would eventually be privy to the identity of her natural parents and all the facts involved in this litigation.

The trial court's judgment which denied the petition to vacate the adoption decree was against the manifest weight of the evidence. Such judgment is reversed, and this cause is remanded with directions to grant the petition to vacate the decree.

Reversed and remanded with directions.

TRAPP, P. J., and SMITH, J., concur.