*In re* MARRIAGE· OF LARRY ALVIN McCASKEY, Petitioner-Appellee and Cross-Appellant, .and BILLIE LUCILLE McCASKEY, Respondent-Appellant and Cross-Appellee.

Fifth District   No. 5—87—0204

Opinion filed April 14, 1988.

John J. Kurowski, P.C., of Belleville (John J. Kurowski, of counsel), for appellant.

Mike Reed, of Crain, Cooksey & Veltman, Ltd., of Centralia, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

This is an appeal from the denial of a petition for relief from judgment filed by respondent, Billie McCaskey. A judgment of dissolution

of marriage was entered on April 9, 1985. The petition filed by Billie was in the form of a motion brought under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), attacking the judgment in two counts. Count I alleged that the court did not have subject matter jurisdiction when it entered the judgment because neither party was a resident of the State of Illinois. Count II alleged that petitioner, Larry McCaskey, exercised coercion or duress upon respondent, Billie McCaskey, in procuring the settlement agreement incorporated in the final judgment of dissolution. Petitioner, Larry McCaskey, denied the allegations and a bench trial was conducted on the issues after extensive discovery proceedings.

On February 6, 1987, the trial court entered a judgment denying the petition, finding that it had subject matter jurisdiction and that the marital agreement was not obtained as a result of coercion or duress. The court ordered Larry to pay Billie's attorney fees in the sum of $3,071.75 and costs.

Billie appeals from the judgment of February 6, 1987, except for the provision of attorney fees. Larry cross-appeals on the awarding of attorney fees.

The facts in evidence and the pleadings disclose that the parties were first married in Illinois in 1954 and have four children, all of whom are emancipated. They were divorced in 1979 in Illinois, but continued to live together. On February 20, 1984, the parties were again married in Florida, and lived together until December 1984. A judgment of dissolution of marriage with a marital settlement agreement attached was entered on April 9, 1985. On December 9, 1985, Billie filed a petition for relief from the judgment of April 9, 1985.

At the bench trial that followed, the testimony revealed that Larry McCaskey grew up in the East St. Louis area and was married to Billie in 1954. They moved to Centralia in 1973 and purchased a business known as Travelectric. They lived at Route 7, Centralia, on Walnut Hill Road until September 1982. He and Billie were divorced in 1979, but continued to live together. In 1978, he purchased a lot in Fairfield Glade, Tennessee. Later, in 1981, he purchased a two-key villa which became rental property. Then, in November 1982, he purchased a town house for $67,500. In 1982 they sold their home in Centralia. They owned another house on Route 5, Centralia, that his parents rented and moved into in December 1982. Larry's parents still live there. Others had rented it before his parents. Larry and Billie stayed at the Racket Club for a short time in 1982 before they went to Tennessee. Billie owned a place in Florida and they spent time in both places. As previously indicated, they were remarried in

Florida on February 20, 1984.

As a preliminary matter, Billie argues that the court erred in refusing to allow into evidence income tax returns for the years 1980 through 1983. We disagree. There was no argument at trial as to their admission on the issue of jurisdiction and, furthermore, it appears from the record that all the necessary facts were before the court and that all tax returns were furnished to Billie, including the 1984 and 1985 returns that were admitted. The court correctly held that the omitted returns were irrelevant.

■ Billie maintains in her first count that the court lacked subject matter jurisdiction because neither party was a resident of the State of Illinois for the requisite period. In this case, as in the case of *Davis v. Davis* (1973), 9 Ill. App. 3d 922, 293 N.E.2d 399, we have a situation where an Illinois resident has been absent from the State. Affirmative acts of abandonment of the Illinois residence must be proved to sustain a contention of abandonment. The key issue as to count I is whether the trial court's finding of subject matter jurisdiction was against the manifest weight of the evidence. The question of whether Larry intended to abandon his residence in Illinois was for the trier of fact to determine and we will not disturb this finding unless it is against the manifest weight of the evidence. *Davis*, 9 Ill. App. 3d 922, 293 N.E.2d 399.

■ The plaintiff's residence in a dissolution proceeding is necessary to confer jurisdiction. (*Davis*, 9 Ill. App. 3d 922, 293 N.E.2d 399.) The term "residence" as used in the statute is not synonymous with domicile, but denotes a "permanent abode" or place one considers as home. Of greatest significance in determining whether a place is one's residence is that person's intent to make a place his permanent home. *Rosenshine v. Rosenshine* (1978), 60 Ill. App. 3d 514, 517, 377 N.E.2d 132, 135.

■ In both *Rosenshine* and *In re Marriage of Passiales* (1986), 144 Ill. App. 3d 629, 494 N.E.2d 541, the appellate court found from the totality of the evidence that the petitioner in each case had abandoned residence in Illinois and established a permanent residence elsewhere. However, in the instant case the facts and circumstances certainly justify the trial court's ruling in finding jurisdiction.

There was no question that both parties were longtime residents of Illinois until late 1982. After that the parties bought houses in Tennessee and Florida and spent most of their time in one of the two States.

Larry was a lifetime resident of Illinois and maintained a mailing address in Illinois through the date of the divorce. He maintained an

Illinois driver's license and was registered to vote in Illinois. All his vehicles were registered and licensed in Illinois. He had bank accounts in Illinois and credit cards with Illinois addresses. His personal physician, dentist, insurance agent and accountant all did business in Illinois. He filed Federal income tax returns from Illinois and filed Illinois State income tax returns. Magazine subscriptions and mail came to his Illinois address. Travelectric, his business, was located in Illinois. He also claimed to have a room at the house he owned and rented to his parents in Centralia, Illinois, and kept some possessions there.

Certainly the trial court's finding that it had jurisdiction of the subject matter was not against the manifest weight of the evidence, given the totality of the evidence before the court. The trial court's finding cannot be overturned unless it is against the manifest weight of the evidence. *Rosenshine*, 60 Ill. App. 3d 514, 377 N.E.2d 132.

In count II of Billie's petition for relief she claims that she entered into the marital settlement agreement because of duress and/or deception and fraud on the part of Larry, thus rendering the agreement unenforceable. She argues that Larry maintained complete emotional and financial control over her life.

The record reflects that Billie obtained a divorce in 1979, but the parties continued to live together and were eventually remarried on February 20, 1984. Billie informed Larry that she wanted a divorce in December 1984. There is no dispute that Larry did not want the divorce, but it was obtained in Illinois on April 9, 1985. The agreement was entered into in February 1985, two months prior to the final judgment. Larry paid her maintenance of $2,000 per month prior to their separation and until August 1985.

Billie testified that she had read the marital settlement agreement and understood its terms. She was also aware of all his and her assets and knew that the agreement included a clause terminating maintenance if she cohabited with another. She further testified that she believed he would, in fact, terminate maintenance if she did cohabit with another. She also read and understood that she was entering into the agreement free of duress and/or coercion.

Billie had filed for and obtained a dissolution from Larry on a prior occasion in 1979 and had obtained a property settlement. The second marriage lasted only 14 months and property was again divided and maintenance awarded. Billie was well acquainted with her rights.

There is no question that Billie was dependent upon Larry for economic support and that she was in a vulnerable position at the time

of the April 1985 dissolution, but she had her own home in Florida, some additional income from employment, and rent from property in Illinois.

■■ ■ Billie claims economic duress. Economic duress is present where one is induced by a wrongful act of another to make a contract under circumstances which deprive him of the exercise of free will, and a contract executed under duress is voidable. (*Kaplan v. Kaplan* (1962), 25 Ill. 2d 181, 182 N.E.2d 706.) *Kaplan* states that one must demonstrate that the threat has left the individual "bereft of the quality of mind essential to the making of a contract." *Kaplan*, 25 Ill. 2d at 186, 182 N.E.2d at 709.

Although, as we indicated earlier, Billie was vulnerable, she certainly was not bereft of the quality of mind essential to make a contract. There is simply no evidence that would rise to the level of duress and coercion so as to justify setting aside this marital settlement agreement.

Billie wanted the divorce, was fully aware of all the terms of the settlement agreement, and had two months to change her mind. Although she contends she was totally dominated by Larry, she had lived for several years away from him in Florida and maintained her own lifestyle.

■■ ■ Waiting until after Larry's remarriage and his termination of the maintenance is not conducive to a persuasive argument of coercion and duress. However, it is not a defense of any relevance for Larry either. Although her action is in the the form of a motion brought under section 2—1401 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401), an attack on the ground of voidness can be brought at any time. Section 2—1401(f) provides as follows:

> "Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." (Ill. Rev. Stat. 1985, ch. 110, par. 2—1401(f).)

Although the defendant argues in his brief the issue of due diligence, it was not properly before the trial court. Therefore we consider the issue waived as to count II. Also, this defense was not raised or argued at trial and can be considered waived. *Star Finance Corp. v. McGee* (1975), 27 Ill. App. 3d 421, 326 N.E.2d 516.

Larry filed a cross-appeal maintaining that the trial court was in error in ordering him to pay $3,071.75 as attorney fees to Billie. He maintains that the judgment was improper because he had done nothing which necessitated or required judicial action. He further main-

tains that the evidence did not reflect his ability to pay. Thus, he contends, the trial court abused its discretion.

■■■ It is well settled that the decisions regarding the propriety of allowing attorney fees and the appropriate amount thereof are matters within the sound discretion of the trial court and will not be disturbed on review absent a clear showing that such discretion was abused. (*In re Marriage of Skahn* (1986), 149 Ill. App. 3d 764, 501 N.E.2d 229; see *In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 483 N.E.2d 1229.) The propriety of an award of attorney fees is dependent upon a showing by the party seeking them of an inability to pay and a demonstration of the ability of the other spouse to do so. (*Bussey*, 108 Ill. 2d 286, 483 N.E.2d 1229.) There is no prohibition against awarding attorney fees to an unsuccessful litigant. *Sidwell v. Sidwell* (1978), 58 Ill. App. 3d 33, 373 N.E.2d 814.

Larry relies on *Kuhns v. Kuhns* (1972), 7 Ill. App. 3d 884, 288 N.E.2d 884. In *Kuhns*, the court reversed an allowance of attorney fees based on the unusual circumstances in that case. The court held that the allowance of attorney fees depends upon the unique circumstances of each case. The instant case is distinguishable on the facts. In the *Kuhns* case and others that follow its reasoning, the court based its ruling on the inequity of forcing someone to court because of another's outrageous conduct. Such is not the case here. Billie proceeded in good faith in an action to set the judgment aside on a jurisdictional question. Larry also maintains that due to his dire circumstances he should not have to pay. The evidence reflects otherwise. Larry was well able to pay and Billie was not.

The court did not abuse its discretion and its ruling on attorney fees will not be disturbed. The allowance of attorney fees rests largely in the discretion of the trial court. To justify the award of attorney fees, the party seeking relief must demonstrate financial inability to pay and the ability of the other spouse to do so. *In re Marriage of Moriarty* (1985), 132 Ill. App. 3d 895, 478 N.E.2d 537.

Based upon the foregoing, we find that the trial court was correct in determining it had jurisdiction, that the marital settlement agreement was not obtained by coercion or duress, and that Billie McCaskey was entitled to attorney fees.

Affirmed.

HARRISON, P.J., and CALVO, J., concur.