*In re* MARRIAGE OF ALBERT J. BRODAY, Petitioner-Appellant, and VICTORIA J. BRODAY, Respondent-Appellee.

First District (3rd Division)   Nos. 1—91—0429, 1—91—2730 cons.

Opinion filed December 22, 1993.—Rehearing denied January 28, 1994.

Roderick E. MacRae and Errol Zavett, both of Davis, Friedman, Zavett, Kane & MacRae; of Chicago, for appellant.

Gary E. Dienstag, of Springer, Casey, Dienstag & Devitt, P.C., and Jay A. Schiller, both of Chicago, for appellee.

JUSTICE GREIMAN delivered the opinion of the court:

Plaintiff Victoria Broday (Victoria) filed an "Amended Petition for Relief from the Judgment of Dissolution of Marriage" (Amended Petition) pursuant to section 2—1401 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401) on grounds that her separation agreement (Separation Agreement) with her former husband, Albert Broday (Albert), denied her an equitable share of various marital and nonmarital assets and by its terms was unconscionable. The trial court granted the Amended Petition, vacating the property settlement portion of the judgment for dissolution of marriage (Judgment).

Victoria's attorney subsequently filed a petition for attorney fees for work performed in conjunction with the section 2—1401 petition. The trial court granted this petition in part and ordered Albert to pay or reimburse Victoria for 75% of her fees.

Albert appeals the trial court's orders granting Victoria relief from the Judgment and the award of attorney fees, and argues that the trial court erred: (1) in vacating the Judgment where the Separation Agreement could not be deemed unconscionable or where there is no proof that the instrument was procured by fraud, duress or coercion; and (2) in granting Victoria attorney fees since she has the financial ability to pay her own fees and her attorney failed to provide an appropriate accounting of his services rendered for these proceedings.

We reverse the trial court's order vacating the property settlement provisions of the Judgment and affirm the order granting Victoria reimbursement of a portion of her attorney fees.

On February 18, 1968, Albert Broday married Victoria. Albert was 37 years old, had been married before and had one child from that marriage. Victoria was 25 years old, had been married before and had one child from her former marriage whom Albert adopted and who is now an adult.

When Albert married Victoria, he owned two insurance businesses, Briar Insurance Agency, Inc. (Briar Insurance), and Albert J. Broday Insurance Agency, Inc. Eleven years before the marriage, Albert transferred his Briar Insurance corporate shares into an *inter*

*vivos* trust. Albert used Briar Insurance funds to form two subsidiary corporations, Briar Financial Service, Inc., and Briar Services, Inc. His insurance business peaked at the beginning of the marriage when gross sales approximated $5 million, and thereafter declined so at the time of the divorce in 1987 gross sales exceeded $1 million. In 1986, Albert listed his net worth in a credit application provided to a bank as $2,071,500.

Albert's unhappiness with the marital relationship apparently stemmed from Victoria's decision to spend time pursuing a career in business. In the mid-1980's, Victoria participated in two businesses which produced and coordinated trade shows. In 1986, Victoria's income amounted to $23,200, of which $16,000 came from her business as a salary and $7,200 constituted her housekeeping allowance.

Albert first expressed his marital discontent to Victoria in 1985, again discussed this subject in 1986 and asked for a divorce in late August 1987. At that time, Albert informed Victoria that he had retained an attorney to represent him and suggested that she retain separate counsel. Albert's attorney was a friend of both parties and had previously served as counsel to both. A friend of Victoria's also suggested that Victoria seek separate counsel. Victoria refused this very sound advice.

Albert and Victoria met twice with Albert's attorney in September 1987. At the first meeting, the attorney informed Victoria that he represented Albert and suggested that she retain separate counsel. Once again, Victoria refused to seek an attorney to represent her.

Before the second meeting, Albert's attorney mailed a copy of the proposed Separation Agreement to each party which stated that the parties acknowledged that each had been fully informed of the property of the other and fully disclosed their respective income and assets. Albert's attorney believed the Separation Agreement listed all of the marital and nonmarital assets of both parties and so informed Victoria. The attorney also informed Victoria that "she really in a situation like this needed her own lawyer." Again, Victoria refused to seek counsel.

Both parties signed the Separation Agreement at the end of the second meeting held on September 25, 1987.

On October 1, 1987, Albert's attorney filed the "Joint Petition for Dissolution of Marriage." At the prove up on October 8, 1987, Albert was represented by counsel and Victoria appeared *pro se*. When the court asked Albert if the Separation Agreement disposed of all the marital and nonmarital property, he answered in the affirmative. When the court questioned Victoria at length as to her decision to appear *pro se*, she stated that she had chosen not to have an attorney

and that she was "satisfied" with this decision and that it was rendered without force or coercion. Victoria also acknowledged that she understood the substance of the provisions of the Separation Agreement, had sufficient time to decide whether it conformed to her desires, and considered it fair and reasonable. Victoria declined the trial court's offer to ask any questions, assumedly to the court, to Albert or to his attorney.

The Judgment entered November 5, 1987, incorporated the Separation Agreement as well as a "Separate Instrument" specifying the distribution of assets agreed upon by the parties. Victoria was to receive or retain $24,000 in cash, $93,000 worth of assets from her business, her individual retirement accounts valued at $12,000 and maintenance payable at the rate of $2,180.56 per month over six years.

Victoria's amended petition alleged that Albert failed to disclose or value marital and nonmarital assets which, if known to her, would have prevented her from signing the Separation Agreement. The most significant assets allegedly omitted from the Separation Agreement concerned Albert's profit-sharing plan valued at $72,480, and the Albert J. Broday Management Company. Albert established this company in 1980 as an investment pool for Briar Insurance and its subsidiaries. These businesses owned 93% of the company, and Albert personally held a 7% ownership interest valued at $45,000.

On January 8, 1991, the trial court entered an order vacating the Judgment on grounds that the Separation Agreement "appears unconscionable."

Victoria's attorney petitioned for attorney fees for 289 hours of work performed in conjunction with the section 2—1401 petition from April 24, 1988, to November 15, 1990. Although Victoria agreed to pay her attorney $175 per hour for his services rendered in or out of court and without a contingent fee arrangement, she had paid him only $2,500 for transcripts of proceedings.

On July 9, 1991, the trial court entered an order granting the petition for fees in the amount of $28,262.50, rather than the $50,575 requested, of which Albert would pay 75%, equal to $21,196. In reaching its decision, the trial court disallowed 130 hours of time as well as fees for services rendered for an earlier section 2—1401 petition which had been dismissed.

Victoria argues that Albert committed fraud by misrepresenting the extent of his marital and nonmarital assets which, if known to her, would have prevented her from signing the Separation Agreement. Such an allegation, if proved, would be appropriate grounds for vacating or modifying the Judgment under a section 2—1401 peti-

tion. *In re Marriage of Carlson* (1981), 101 Ill. App. 3d 924, 929-30, 428 N.E.2d 1005.

To prove fraud, Victoria must show by clear and convincing evidence that Albert intentionally misstated or concealed a material fact which he had a duty to disclose and that she detrimentally relied upon his statement or conduct. (*In re Marriage of Travlos* (1991), 218 Ill. App. 3d 1030, 1037, 578 N.E.2d 1267; see *In re Marriage of Reines* (1989), 184 Ill. App. 3d 392, 540 N.E.2d 394 (husband's failure to disclose all his assets including pension benefits amounted to fraud).) For concealment of information to be actionable, it must be such that the silent party intends to deceive the other. *In re Marriage of Gurin* (1991), 212 Ill. App. 3d 806, 813, 571 N.E.2d 857, citing *Lagen v. Lagen* (1973), 14 Ill. App. 3d 74, 79, 302 N.E.2d 201.

Victoria claims that she had reason to rely on the Separation Agreement as an accurate and complete listing of Albert's assets based on Albert's statement that he would be "fair" to her in the distribution of marital funds, and Albert's statement to the court that the Separation Agreement disposed of all the marital and nonmarital property. Although Victoria claims that she could not have learned of Albert's profit-sharing plan in particular since Albert's attorney was unaware of its existence until after the Separation Agreement was signed, this profit-sharing plan is specifically mentioned in the Separate Instrument and she had ample time to consider its implications.

A settlement agreement will only be set aside if the misrepresented assets "could not reasonably have been discovered at the time of or prior to the entry of the judgment." (*Travlos*, 218 Ill. App. 3d at 1035.) A divorcing party will not be relieved of the consequences of her own lack of diligence in failing to discover such information relevant to the divorce proceeding. *Travlos*, 218 Ill. App. 3d at 1035; *Lagen*, 14 Ill. App. 3d at 81.

Albert denies that he committed any fraudulent act with regard to concealing information about his financial status and the trial court exonerated him from such allegations. He further argues that, despite ample opportunity, Victoria failed to investigate his marital and nonmarital assets through her own research or by hiring an attorney, and that such failure to inquire should bind her to the terms of the Separation Agreement and the accompanying instruments.

■ Although it is questionable whether Albert was forthright in revealing the extent of his financial holdings, the trial court found that he lacked the intent to deceive, stating, "I cannot make the determination of a genuine intent of Mr. Broday to keep from Mrs. Bro-

day certain information." Hence, the requirement of *scienter* is missing in assessing the elements of fraud.

Moreover, the fact that Victoria could have discovered information about Albert's financial status through her own investigation or by hiring an attorney diminishes her claim of detrimental reliance on Albert's alleged misrepresentations. (See *Lagen*, 14 Ill. App. 3d at 81 (wife who had ample opportunities to examine facts of husband's financial worth cannot vacate portion of divorce decree on grounds that she was deceived by alleged concealment of husband's assets); *Travlos*, 218 Ill. App. 3d at 1038-39 (ex-husband's allegations of fraudulent concealment did not excuse his lack of due diligence in discovering evidence of ex-wife's property ownership).)

> " 'A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge.' " (*Lagen*, 14 Ill. App. 3d at 81, quoting *Dickinson v. Dickinson* (1922), 305 Ill. 521, 527-28, 137 N.E. 468.)

The record is clear that Victoria was advised to seek independent counsel from Albert, from her friend, and on several occasions from Albert's attorney. Moreover, at the prove up Victoria had the opportunity to arrest the proceedings when asked questions regarding her competency to represent herself and her understanding of the consequences of such a decision. Instead, she assured the trial court that she understood the nature of the proceedings and her decision to proceed *pro se*. Finally, Victoria had 30 days to contact an attorney to contest the Judgment from November 5, 1987, the date when the court entered the order.

Albert argues that an inability to find that he committed fraud in dealing with Victoria indicates that the Separation Agreement is not unconscionable. However, section 502(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides that the terms of an agreement between the parties shall be binding unless the court finds, "after considering the economic circumstances of the parties and any other relevant evidence produced by the parties *** that the agreement is unconscionable." Ill. Rev. Stat. 1987, ch. 40, par. 502(b).

The standard of unconscionability regarding divorce settlement agreements includes " 'protection against overreaching, concealment of assets, and sharp dealing not consistent with the obligations of marital partners to deal fairly with each other.' " (*Carlson*, 101 Ill. App. 3d at 930, quoting Ill. Ann. Stat., ch. 40, par. 502, Historical & Practice Notes, at 401 (Smith-Hurd 1980).) Sharp dealing in the mar-

ital relations context may encompass " 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.' " *Carlson*, 101 Ill. App. 3d at 930, quoting *Williams v. Walker-Thomas Furniture Co.* (D.C. Cir. 1965), 350 F.2d 445, 449.

Victoria urges this court to affirm the finding of unconscionability on grounds that she had no meaningful choice in entering into the Separation Agreement because Albert's attorney effectively represented both parties in that he explained the differences between marital and nonmarital property to her and prepared the "Joint Petition" for dissolution of marriage, and that she was justified in relying on his advice since he had represented her in a previous business venture.

Victoria's arguments regarding her lack of meaningful choice are not persuasive, especially in light of the fact that she had ample opportunity to investigate her husband's finances herself or retain separate counsel to do so.

Victoria's situation contrasts with the wife in *Reines* (184 Ill. App. 3d 392, 540 N.E.2d 394), who truly lacked a meaningful choice since her husband's attorney represented both spouses. In *Reines*, the husband selected the attorney, took the wife to the attorney's office and provided the attorney with all the information upon which to base the settlement agreement. The wife in *Reines* affirmatively agreed to representation by such attorney who in fact filed an appearance on behalf of both spouses and drafted the settlement agreement in accord with the husband's wishes. Alternatively, Victoria had ample opportunity to protect her financial interests by disputing any portion of the Separation Agreement before, during or after the trial court granted the Judgment yet affirmatively chose not to do so; hence, she cannot now claim herself a victim of an unconscionable bargain.

A section 2—1401 petition serves to bring before the court that rendered judgment "facts not appearing of record which, if known to the court at the time judgment was entered, would have prevented its rendition." (*Travlos*, 218 Ill. App. 3d at 1035.) Courts apply this section with the aim of achieving justice, not to give the litigant "a new opportunity to do that which should have been done in an earlier proceeding" or to relieve the litigant "of the consequences of his mistake or negligence." (*Travlos*, 218 Ill. App. 3d at 1035.) Although we give great deference to the trial court, Victoria failed to prove fraud or unconscionability as grounds to vacate the property settlement portion of the Judgment, so that granting her Amended Petition was not supported by the evidence.

Finally, Albert claims that the trial court abused its discretion in ordering him to pay a portion of Victoria's attorney fees because: (1) Albert's success on appeal precludes a fee award in favor of Victoria as the unsuccessful litigant; (2) Victoria has the financial ability to pay her own fees; and (3) Victoria's attorney failed to present persuasive evidence that he expended the time claimed for this proceeding.

Although the primary responsibility for attorney fees rests with the party for whom the services were rendered (*In re Marriage of Geis* (1987), 159 Ill. App. 3d 975, 989, 512 N.E.2d 1354), the Act authorizes a trial court to order either spouse to pay a reasonable amount for attorney fees necessarily incurred. (*Geis*, 159 Ill. App. 3d at 990, citing Ill. Rev. Stat. 1983, ch. 40, par. 508(a)(2).) A party seeking to vacate a divorce settlement agreement may receive attorney fees if she proceeds in good faith, even if she is unsuccessful. (*In re Marriage of McCaskey* (1988), 167 Ill. App. 3d 860, 866, 522 N.E.2d 300 (court upholds fee award to unsuccessful litigant whose former husband was "well able" to pay her attorney though she was not).) Awards of attorney fees rest within the sound discretion of the trial court based on the particular situation of each case and will not be disturbed unless that court has clearly abused its discretion. *McCaskey*, 167 Ill. App. 3d at 866.

■ Victoria has shown that she lacks the financial ability to pay her own fees and that Albert has such an ability. (*McCaskey*, 167 Ill. App. 3d at 866; *Geis*, 159 Ill. App. 3d at 990.) The party seeking fees need not be destitute for the trial court to grant this award. (*In re Marriage of Piccione* (1987), 158 Ill. App. 3d 955, 964, 511 N.E.2d 1157.) Attorney fee awards have been upheld where the party seeking the award has had a regular income or salary, a savings account, stocks, securities or other liquid assets, or real estate. *In re Marriage of Yakin* (1982), 107 Ill. App. 3d 1103, 1118, 436 N.E.2d 573 (attorney fee award upheld on the basis of recipient's inferior ability to pay since her income amounted to one-third less than that of her former husband, and whose only asset was a mortgaged marital home subject to a lien payable to husband).

The record in the present case evinces a great financial disparity between the parties. As part of the divorce settlement agreement, Albert agreed to pay Victoria a $24,000 lump sum to set up housekeeping and $2,180.56 a month for 72 months. Victoria became aware that she had a financial problem a few months after she moved into her one-bedroom apartment after the divorce since "every penny was being spent just to pay rent and electric bills and phone bills." Victoria expected to receive an inheritance of $20,000 to $25,000. In the

meantime, the record shows that as of February 19, 1991, Victoria had only $1,000 in her personal bank account and $800 in her business account besides her individual retirement accounts valued at $12,000.

On the other hand, Albert maintained a high standard of living which has not changed since his divorce from Victoria. His admitted net worth including real estate, personal property, marital property and what he considered as nonmarital property exceeds $1 million.

A spouse seeking a reimbursement of fees, however, must present sufficient evidence from which the trial court can render a decision as to the reasonableness of the fees requested. (*Harris Trust & Savings Bank v. American National Bank & Trust Co.* (1992), 230 Ill. App. 3d 591, 594 N.E.2d 1308; see *Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 984, 518 N.E.2d 424.) The sufficiency of the evidence depends on whether the petitioner presents "detailed records maintained during the course of the litigation concerning facts and computations upon which the charges are predicated." (*Kaiser*, 164 Ill. App. 3d at 984 (photocopied bills with daily time reports lacked foundation to assist the trial court in determining the reasonableness of attorney fees charged).) The absence of specificity with regard to task and time precludes a finding of reasonableness by the trial court. (*In re Marriage of Collins* (1987), 154 Ill. App. 3d 655, 506 N.E.2d 1000 (general statements by divorce attorney regarding services rendered were insufficient to justify a fee award); *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 277, 411 N.E.2d 947.) The trial court has discretion to reduce a fee award to an amount which it considers reasonable based on the knowledge it acquires in the discharge of its duties. *In re Marriage of Pitulla* (1990), 202 Ill. App. 3d 103, 113, 559 N.E.2d 819.

In the present controversy, the record shows that Victoria's attorney failed to provide the trial court with a specific account of time expended for this proceeding. For example, the attorney submitted a summary of services rendered on behalf of his client for this proceeding, and then produced an amended list to provide the requisite detail. (*Cf. In re Marriage of Hirsch* (1985), 135 Ill. App. 3d 945, 957, 482 N.E.2d 625 (attorneys who "reconstructed" their time by examining files rather than keeping contemporaneous time records received reduced fee award on review).) The trial court refused to accept this accounting of services rendered on Victoria's behalf. Instead, after seven separate evidentiary hearings, the trial court calculated a fee which it considered reasonable. Reviewing each item of service claimed by Victoria's attorney, the trial court eliminated 130 of the 289 hours claimed and determined that the reasonable

value of services performed by the attorney amounted to $28,262.50, and ordered Albert to pay 75% of this sum.

For the foregoing reasons, we reverse the trial court order vacating the property settlement portion of the Judgment, and affirm the order granting Victoria a reimbursement of a portion of her attorney fees.

Affirmed in part; reversed in part.

TULLY, P.J., and RIZZI, J., concur.