# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Goldsmith*, 2011 IL App (1st) 093448

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JACQUELINE GOLDSMITH, Petitioner-Appellant, and GREG E. GOLDSMITH, Respondent-Appellee. |
| District & No. | First District, Sixth Division<br>Docket Nos. 1-09-3448, 1-10-0964 cons. |
| Filed | August 26, 2011 |
| Rehearing denied | January 20, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In postjudgment proceedings based on petitioner's allegations that respondent failed to disclose certain assets, the trial court properly concluded that petitioner's claims lacked merit and that she failed to act diligently in pursuing her motion to vacate the judgment that incorporated the parties' settlement agreement, which acknowledged that in lieu of formal discovery, the parties represented that each had made complete disclosure of his or her property to the other. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 01-D-14779; the Hon. Lisa Ruble Murphy, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Barry H. Greenburg, Jewel N. Klein, and Jacqueline Goldsmith, all of Law Firm of Barry H. Greenburg, of Chicago, for appellant.

Alan D. Hoffenberg, of Law Offices of Alan D. Hoffenberg, and Paul J. Bargiel, of Paul J. Bargiel, P.C., both of Chicago, for appellee.

Panel

PRESIDING JUSTICE GARCIA delivered the judgment of the court, with opinion.

Justices Cahill and R. Gordon concurred in the judgment and opinion.

**OPINION**

¶ 1    The parties agreed to the entry of a judgment of dissolution of marriage that incorporated a settlement agreement in which the parties acknowledged they engaged in limited discovery. In lieu of formal discovery, each party represented and warranted that a full and complete disclosure of his or her property had been made to the other. About a year and a half after the judgment was entered, petitioner Jacqueline Goldsmith filed a "Petition to Enforce Judgment or in the Alternative to Vacate the Judgment for Dissolution of Marriage," alleging she discovered respondent Greg E. Goldsmith concealed three assets worth nearly $2 million. The circuit court granted summary judgment to the respondent. The petitioner contends the trial court erred when it determined that her failure to engage in formal discovery to ascertain the respondent's net worth meant she did not act diligently as a matter of law to pursue a motion to vacate. The trial court also concluded that none of her claims over the purportedly undisclosed assets had merit to warrant consideration of her motion to enforce the judgment as a matter of law. We agree on both counts and affirm.

¶ 2                                    BACKGROUND

¶ 3    The parties had been married for 10 years when they divorced in March 2003. During the marriage, the respondent was a trader at the Chicago Board of Trade. According to the parties' prenuptial agreement, the respondent's seat at the Chicago Board of Trade was nonmarital property and his net worth at the time was $3,351,500. During the dissolution of marriage proceedings, respondent's counsel disclosed to petitioner's counsel the net worth of the respondent as $6,525,000. The petitioner received $1.8 million in the judgment of dissolution of marriage.

¶ 4    Prior to judgment in this case, the respondent's counsel sent the petitioner an unsigned affidavit from the respondent disclosing his assets. Under the title, "My assets," the respondent disclosed:

"Waterhouse Securities          –    $3,100,000
Sage                            –    $50,000

-2-

The Peoples Bank of Elkhorn    –    $200,000

Cambridge Bank    –    $100,000."

¶ 5    The judgment of dissolution incorporated a marriage settlement agreement (MSA), in which the parties acknowledged they engaged in limited discovery. At issue here is paragraph F of the MSA.

> "WHEREAS, the parties acknowledge each of them has been fully informed of the estate, income, assets and liabilities of the other, and each is conversant with the estate, income, assets and liabilities possessed by the other. Each party represents and warrants they have made a full and complete disclosure of his or her property. In the event a court of competent jurisdiction subsequently determines either party owned or possessed property not disclosed during these proceedings, said property shall be distributed pursuant to the facts delineated in 750 ILCS 5/503."

¶ 6    During the prove-up and prior to the court's approval of the MSA, the petitioner explained her reliance on the respondent's full disclosure during direct examination by her counsel.

> "Q. Miss Goldsmith, you have further entered into this settlement based upon various correspondence both with [respondent's counsel] and from [respondent] who purportedly disclosed all of his assets and the values of the same, is that correct?
>
> A. I'm relying that that information is correct.
>
> Q. And in reliance on it, you entered into this settlement agreement, is that correct?
>
> A. On reliance, I have."

Her counsel continued:

> "Q. And you believe this judgment, based upon the representations, and your reliance on them, made by [the respondent] that [the settlement] is fair and reasonable?
>
> A. If it is all true, yes."

The court interjected:

> "THE COURT: She said if it is all true. She understood that she could have [taken] discovery in this matter, correct?
>
> [Petitioner's Counsel]: Right."

¶ 7    On September 8, 2004, the petitioner filed a petition alleging the respondent failed to disclose certain assets to her, which triggered a provision in the MSA that undisclosed assets were subject to division by the court pursuant to section 503 and enforceable under section 511 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/503, 511 (West 2008)). Alternatively, the petitioner asked the judgment be vacated pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)). The petitioner claimed that, despite the respondent's representation in the MSA that he had made a full disclosure of his assets, she discovered he failed to disclose nearly $2 million held in three assets: (1) $1.3 million in a lawsuit recovery (the Pinez litigation); (2) $300,000 in jointly held bank stock in the Peoples Bank of Elkhorn and Cambridge Bank; and (3) approximately $300,000 in refunds from the 1999 amended joint income tax returns. In her pleadings, she

claimed she had a meritorious claim to each of the assets and she acted diligently based on her reliance on the asset disclosure letter and the representation and warranty in the MSA that the respondent had disclosed all of his property.

¶ 8    Regarding the first undisclosed asset, the petitioner alleged she had a right to a share in the monies from the Pinez litigation because the cause of action arose during the marriage and suit was filed during the marriage. There is no dispute that the respondent failed to disclose the existence of the litigation in his asset disclosure.

¶ 9    Regarding the second undisclosed asset, the petitioner claimed she learned in June 2004 of the respondent's stock ownership in the Peoples Bank of Elkhorn when he attempted to transfer shares of the stock solely to his name. She further claimed the bank stock was not disclosed to her because the respondent's financial disclosure, listing $200,000 and $100,000 in the respective banks, led her to assume that cash was on deposit there, not that the parties owned stock in each bank.

¶ 10    Regarding the third undisclosed asset, the petitioner alleged the respondent never disclosed that their amended 1999 joint tax returns, which the respondent filed in 2004 after the judgment was entered, resulted in substantial tax refunds: $279,328 from the federal return and $21,995 from the Illinois return. The petitioner claimed the respondent's failure to disclose these potential refunds violated the representation and warranty in the MSA of full and complete disclosure.

¶ 11    On March 10, 2005, the respondent answered the petition, denying the petitioner had any rightful claim to the assets, with no assertion of an affirmative defense. In April 2008, the respondent filed a motion for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2008)), arguing the petitioner was not entitled to enforce the judgment under section 511 of the Act or a vacation of judgment under section 2-1401 because the claims had no merit and she failed to demonstrate due diligence. On November 18, 2009, following the filing of briefs and argument, the trial court granted the respondent's motion for summary judgment: "[T]he evidence established that, at the time of the entry of the Judgment of Dissolution of Marriage, [the petitioner] either knew of or reasonably could have discovered the 'newly discovered assets' ***." The court ruled the petitioner's pleadings presented no credible evidence that the respondent fraudulently concealed the assets; nor did she assert a fraudulent concealment claim in her motion to vacate. The petitioner filed her timely notice of appeal on December 11, 2009.

¶ 12    The week after the petitioner filed her notice of appeal, the respondent filed a petition seeking attorney fees from the petitioner. The petition for attorney fees was dismissed by agreement on March 30, 2010. On April 2, 2010, the petitioner filed her second notice of appeal to ensure her first notice was not premature. The appeals were consolidated.

¶ 13                                ANALYSIS

¶ 14    Section 2-1401 provides a comprehensive scheme for obtaining relief from a final judgment when 30 days or more have elapsed since its entry. 735 ILCS 5/2-1401 (West 2008). The purpose of a section 2-1401 petition is to alert the circuit court to facts which, if they had been known at the time, would have precluded entry of the judgment. *People v.*

*Haynes*, 192 Ill. 2d 437, 461 (2000). "However, the proceeding is not intended to give the litigant a new opportunity to do that which should have been done in an earlier proceeding or to relieve the litigant of the consequences of her mistake or negligence." *In re Marriage of Himmel*, 285 Ill. App. 3d 145, 148 (1996) (citing *In re Marriage of Broday*, 256 Ill. App. 3d 699, 705 (1993)).

¶ 15    To be entitled to relief under section 2-1401 of the Code, the petitioner must set forth specific factual allegations showing the existence of a meritorious claim, demonstrate due diligence in presenting the claim to the circuit court in the original action, and act with due diligence in filing the section 2-1401 petition. *In re Marriage of Buck*, 318 Ill. App. 3d 489, 493 (2000). To set aside a judgment based on newly discovered evidence, the petitioner must show the new evidence was not known to her at the time of the proceeding and could not have been discovered by the petitioner with the exercise of reasonable diligence. *Id.* Under section 2-1401, the petitioner bears the burden of establishing her right to relief. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 221 (1986). "Five types of final dispositions are possible in section 2-1401 litigation: 'the trial judge may dismiss the petition; the trial judge may grant or deny the petition on the pleadings alone (summary judgment); or the trial judge may grant or deny relief after holding a hearing at which factual disputes are resolved.' " *Mills v. McDuffa*, 393 Ill. App. 3d 940, 946 (2009) (quoting *People v. Vincent*, 226 Ill. 2d 1, 9 (2007)).

¶ 16    The applicable standard of review depends on which of the five dispositions is entered. After a hearing where factual disputes are resolved, the decision to grant or deny relief under section 2-1401 is a matter within the sound discretion of the trial court. See *Uptown Federal Savings & Loan Ass'n of Chicago v. Kotsiopoulos*, 105 Ill. App. 3d 444, 451 (1982) (noting the manifest weight of the evidence standard applies after the trial court has held an evidentiary hearing on a section 2-1401 petition); *cf. Vincent*, 226 Ill. 2d at 16 ("an abuse of discretion standard of review in cases where either a judgment on the pleadings or a dismissal has been entered does not comport with the usual rules of civil practice and procedure"). In the instant case, the court granted summary judgment to the respondent.

¶ 17    Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005 (West 2008). The trial court may grant summary judgment after considering "the pleadings, depositions, admissions, exhibits, and affidavits on file in the case" and construing that evidence in favor of the nonmoving party. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Although summary judgment is to be encouraged as an expeditious aid to dispose of a lawsuit, it "is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Accordingly, we review grants of summary judgment *de novo*. *Id.*

¶ 18    On *de novo* review, all of the petitioner's well-pled allegations are accepted as true. The diligence with which the petitioner filed her section 2-1401 petition is not at issue. The parties dispute whether she acted diligently during the divorce proceedings such that the claims she asserts are not "newly discovered." The dispositive issue is whether the petition adequately set forth sufficient facts to entitle her to the relief she requested. See *Vincent*, 226 Ill. 2d at 14, 16.

¶ 19     At the heart of the petitioner's petition seeking alternative relief is her argument that had the trial court known of the three assets discovered by the petitioner, the court would not have entered the judgment it did in the parties' dissolution action. With full and complete disclosure by the respondent, she claims she would have received a share of the three assets.

¶ 20     Regarding her request that the judgment be vacated, the petitioner contends the trial court erred when it concluded that, as a matter of law, a showing of diligence was precluded based on the parties' decision to forego formal discovery. She contends reasonable reliance in a divorce case equates with a showing of diligence. The petitioner argues she properly relied on the representation and warranty of full disclosure by the respondent in the MSA, which his counsel confirmed separately by affidavit, albeit one unsigned by the respondent.

¶ 21     Regarding her request that the judgment be enforced, she contends the parties provided for the possibility of nondisclosure of assets in the MSA by reference to section 503 of the Act, which permits a court to divide later-discovered property. 750 ILCS 5/503 (West 2008).

¶ 22     The petitioner argues the trial court should have enforced the provision of the MSA regarding later-discovered property under section 511 of the Act or vacated the judgment pursuant to section 2-1401 of the Code.

¶ 23     The respondent contends that a showing of diligence by the petitioner is foreclosed because she either knew of the assets or they were discoverable in the course of formal discovery, which she failed to pursue. In any event, the petitioner's claims over the purportedly undisclosed assets have no merit. We address the latter issue first.

¶ 24                                             Merit of Claims

¶ 25     The parties submitted opposing motions for the trial court's resolution with neither party requesting an evidentiary hearing. In effect, the parties took the position that each was entitled to judgment as a matter of law. See *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 339 (2005) (where cross-motions for summary disposition are filed, the parties acknowledge that only a question of law is at issue).

¶ 26                                          The Pinez Litigation

¶ 27     The respondent argues the Pinez litigation was not subject to a claim by the petitioner because the litigation concerned nonmarital property. In his reply to the petitioner's response to his summary judgment motion below, the respondent argued his funding of the marriage from his trading account provided all the compensation the marital estate was entitled to. According to the respondent, the Pinez litigation concerned his seat at the Chicago Board of Trade, which the parties' prenuptial agreement listed as nonmarital property. That characterization in the prenuptial agreement was never challenged below.

¶ 28     The Pinez litigation was initiated by the Securities and Exchange Commission in 1997 based on fraudulent insider trading by Edward Pinez. The litigation was filed during the parties' marriage, well in advance of the dissolution proceedings. In 2003, the respondent submitted a proof of claim for his trading losses flowing from Pinez's fraudulent trading

activities. The petitioner's claim is for a share of the respondent's recovered losses.

¶ 29        The petitioner contends the Pinez litigation recovery falls within section 503 of the Act, which the parties incorporated in paragraph F of their MSA:

> "In the event a court of competent jurisdiction subsequently determines either party owned or possessed property not disclosed during these proceedings, said property shall be distributed pursuant to the factors delineated in 750 ILCS 5/503."

¶ 30        In the parties' prenuptial agreement, the petitioner agreed that the respondent's trading activities were conducted out of his nonmarital trading accounts at Sage and First Option. Because the settlement from the Pinez litigation was the result of the respondent's trading activities, the settlement is likewise nonmarital property, unless commingling of marital and nonmarital property occurred under section 503(c)(2) of the Act.

> "When one estate of property makes a contribution to another estate of property, or when a spouse contributes personal effort to non-marital property, the contributing estate shall be reimbursed from the estate receiving the contribution notwithstanding any transmutation; provided, that no such reimbursement shall be made with respect to a contribution which is not retraceable by clear and convincing evidence, or was a gift, or, in the case of a contribution of personal effort of a spouse to non-marital property, unless the effort is significant and results in substantial appreciation of the non-marital property. Personal effort of a spouse shall be deemed a contribution by the marital estate. The court may provide for reimbursement out of the marital property to be divided or by imposing a lien against the non-marital property which received the contribution." 750 ILCS 5/503(c)(2) (West 2008).

¶ 31        In her petition to enforce or, alternatively, vacate the judgment, the petitioner focuses exclusively on the respondent's admitted failure to formally disclose this asset to her. The petitioner makes no claim that the marital estate was entitled to reimbursement under the provisions of section 503(c)(2); nor did the petitioner allege that during the course of the fraudulent insider trading, the marital estate was deprived of adequate funds to support the marriage. Nor is it clear that the settlement from the Pinez litigation was not included in the net worth of the respondent disclosed to the petitioner during the dissolution proceedings.

¶ 32        The petitioner bears the burden of alleging specific facts evidencing her right to a share in this asset under the petition she filed. The petition is barren of any allegation that the Pinez litigation award was transformed into a marital asset by commingling or otherwise. The trial court properly concluded the petitioner failed to raise a meritorious claim over the proceeds of the Pinez litigation.

¶ 33                                                    Bank Stocks

¶ 34        The petitioner claims nondisclosure of the respondent's interest in Cambridge Bank and Peoples Bank of Elkhorn based on the assets not being designated as stock on the respondent's unsigned affidavit. The petitioner claims she became aware that the listed bank assets were held in the form of stock upon her receipt of a request to sign over her interest in the stock several months after the entry of the judgment. The request was accompanied by a letter of transmittal that showed the respondent had crossed out petitioner's name in a

-7-

failed attempt to surrender the jointly held stock.

¶ 35    The respondent pointed out in his motion that he disclosed the existence of the bank assets and their respective value in his unsigned affidavit. He argued it should make no difference that the bank assets were not listed as "stock" when there is no claim that the value of the assets was understated, and the trial court agreed. We agree as well.

¶ 36    The nature of the bank assets apparently made no difference to the petitioner prior to her acceptance of the MSA for if she had had a desire to determine the exact nature of the assets, as the trial court pointed out, "she had every opportunity to do so." In any event, the petition failed to claim the nondisclosure of the nature of the assets made any difference. As the petitioner's counsel admitted, "There is no issue as to the misrepresentation as to the value of any of the assets, at least in the petition that I am aware of."

¶ 37    The trial court properly concluded the petitioner failed to raise a meritorious claim over the nature of the bank assets when the value of each was fully disclosed.

¶ 38                                    1999 Tax Return Refund

¶ 39    Finally, the petitioner claims a share of the refund from the amended joint income tax returns from 1999. She contends the language in subsection 3.16(f) of the MSA ensuring that she be informed of all amended joint returns filed after the judgment was entered, coupled with the clear nature of the income tax refunds as marital property, makes this claim undeniably meritorious.

¶ 40    Rules used to govern contract interpretation are applicable to give meaning to provisions of a marital settlement agreement. *In re Marriage of Sweders*, 296 Ill. App. 3d 919, 922 (1998). The parties agree that a court may not modify or add a term where the MSA is silent on a matter, each citing *Gallagher v. Lenart*, 367 Ill. App. 3d 293 (2006), as support for this proposition.

¶ 41    The petitioner argues that because the MSA contains no provision that permits the respondent to exclusively claim refunds from any amended joint income tax returns filed after the MSA was signed, the marital nature of the refunds entitles her to a share. She acknowledges subsection 3.16(f) grants to the respondent the right to file amended returns after the entry of the judgment of dissolution at his discretion, but notes it contains no language barring her right to claim a share of any refund from such an amended joint return as presumptively marital property.

¶ 42    The respondent argues that because the MSA does not expressly provide for the petitioner to share in a refund from an amended tax return filed *after* the judgment is entered, it would violate the rule in *Gallagher* to find such a right regarding the 1999 amended tax returns filed in 2004. The respondent contrasts the omission of such a right in subsection 3.16(f) with the language of subsection 3.16(g) that gives the petitioner the right to share in any refund up to $100,000 from the amended tax returns pending at the time of the MSA. The respondent argues that the express provisions of section 3.16 addressing "all *previous* joint tax returns" make clear that the petitioner has no right to share in any refunds from amended returns filed after the dissolution judgment is entered, such as the 1999 amended returns. (Emphasis added.) The trial court agreed, as do we.

¶ 43    The parties agreed to be bound by the MSA, which expresses the rights each party was entitled to assert. Subsection 3.16(g) of the MSA expressly provides: "The husband has filed for a tax refund based upon certain losses sustained during the marriage[;] *** in the event he receives a refund as a result of said amended return he will in that event pay to the Wife an amount equal to ten per cent (10%) *** not to exceed $100,000 ***." Certainly, it was foreseeable that other amended returns could be filed by the respondent as the MSA expressly gave him that right. If the petitioner sought to share in refunds for returns not filed as of the date of the MSA, it would have been a simple matter to have the MSA so provide. In the absence of such a provision, we agree with the trial court that the petitioner's claim was barred when she was not granted such a right or benefit by the MSA.

¶ 44    This conclusion is further supported by subsection 3.16(h), which specifically requires the respondent to indemnify the petitioner against any income taxes due on joint returns filed after the signing of the MSA. This provision confirms that it was foreseeable that amended tax returns might be filed after the entry of the judgment. This subsection protects the petitioner against any tax liability arising from tax returns filed after the judgment was entered. We reject the petitioner's contention that silence in the MSA can be interpreted as granting her a right to share in refunds due from such amended tax returns in the face of an express provision that protects her from any additional tax liability from those very same returns. We decline to add a benefit to the petitioner in the MSA that was not negotiated with the respondent.

¶ 45    The trial court properly concluded the petitioner had no meritorious claim over the refunds from the federal and state amended tax returns for 1999.

¶ 46                                          Due Diligence

¶ 47    While we have rejected the petitioner's contentions that she had a meritorious claim over each of the purportedly undisclosed assets, which is fatal to her petition, we elect to address the petitioner's claim that she acted with legal due diligence based on her reliance on the representation and warranty in the MSA and the respondent's unsigned affidavit. We do so to make clear that the petitioner's contention of legal diligence based on reliance, in lieu of formal discovery, is without support in Illinois law. When a divorce party elects to forego formal discovery in favor of accepting a representation and warranty of full and complete disclosure, the party does so at his or her own peril. We emphasize that this case does not present a question of fraudulent concealment of assets, as the trial court found below.

¶ 48    The petitioner acknowledges in her main brief that, generally, a party's failure to engage in discovery prior to entering into an agreement defeats that party's claim of reliance on those representations, citing both *Himmel* and *Broday*. The petitioner seeks to create an exception to this rule where there is a written agreement in which each party represents and warrants a full and complete disclosure of property, as the petitioner and respondent did here in the MSA. As she contends, "formal discovery was not necessary *** [because she] had no reason to doubt the veracity of the information provided."

¶ 49    Due diligence is judged by the reasonableness of a petitioner's conduct under the circumstances. *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99-101 (2006).

Considering the circumstances of this case, we find, just as the trial court did, the petitioner failed to exercise due diligence when she elected to accept the respondent's "representation and warranty" over the opportunity to engage in formal discovery. Her expressions of reliance on the respondent's representation and warranty of full disclosure during the prove-up are of no aid to the petitioner. When asked by her counsel about her acceptance of the respondent's assets disclosure, she gave a qualified response, "if it is all true." The trial court interrupted to make clear any uncertainties should be resolved prior to the entry of judgment. "She understood that she could have [taken] discovery in this matter, correct?" Counsel replied, "Right."

¶ 50 Given the record before us, we agree with the trial court's finding that the petitioner did not act with due diligence regarding each of her claims of the purportedly undisclosed assets. Without a showing of due diligence, the petitioner failed to establish a necessary element to reopen the judgment. We find no error in the trial court's conclusion that to allow the petitioner to proceed with her section 2-1401 petition would give her a second opportunity to do that which should have been done in the initial proceedings. See *Himmel*, 285 Ill. App. 3d at 148.

¶ 51 A representation and warranty of full disclosure in a marital settlement agreement, even when the full disclosure is confirmed by affidavit (albeit unsigned here) cannot be used as an escape hatch to avoid the consequences of failing to act diligently in the first instance by engaging in sufficient discovery, a proposition that has been long established in Illinois law. " 'A party in possession of his mental faculties is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth of the representations he is chargeable with knowledge. If one does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations.' " *Lagen v. Lagen*, 14 Ill. App. 3d 74, 81 (1973) (quoting *Dickinson v. Dickinson* 305 Ill. 521, 527-28 (1922)).

¶ 52 The trial court properly concluded the petitioner did not act with due diligence in presenting her claims to challenge the judgment of dissolution of marriage, which incorporated the marital settlement agreement signed by the parties. The section 2-1401 petition was deficient as a matter of law, notwithstanding the petitioner's contention that her reasonable reliance on the representation and warranty by the respondent of full and complete disclosure in the MSA constituted legal diligence.

¶ 53 Affirmed.